Matthew R. Lewis (#7919)
R. Jeremy Adamson (#12818)
Megan J. Nelson (#15691)
KUNZLER BEAN & ADAMSON, PC
50 W. Broadway, 10th Floor
Salt Lake City, Utah 84101
Telephone: 801-994-4646
mlewis@kba.law
jadamson@kba.law
mnelson@kba.law

*Attorneys for Defendants Grand America Hotels*
*& Resorts, Inc. and Sinclair Services Company*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JANN DESCANZO, et al.,<br><br>            Plaintiffs,<br><br>v.<br><br>GRAND AMERICA HOTELS & RESORTS, INC., et al.,<br><br>            Defendants. | **DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AND SECOND CLAIMS FOR RELIEF**<br><br>Case No. 2:19-CV-00443-DB<br><br>Judge Dee Benson |

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Grand

America Hotels & Resorts, Inc. ("Grand America"), and Sinclair Services Company[1] ("Sinclair")

(collectively, "Defendants") hereby submit this *Motion to Dismiss* asking that the Court dismiss

Plaintiffs' First and Second Claims for Relief for failing to state a claim upon which relief may

be granted.

---

[1] Plaintiffs incorrectly named and refer to "Sinclair Service Co." in their complaint.

## I.    **INTRODUCTION**

Plaintiffs Jann Descanzo ("Descanzo"), Veronica Bondoc  ("Bondoc"), Glen Segundino ("Segundino"), and Marianne Ponio ("Ponio") (collectively, "Plaintiffs") are citizens of the Philippines who apparently paid fees to a sponsor (not any of the named defendants) in order to participate in a J-1 visa internship program.[2]  As clearly set forth in the applicable regulations and program guidance, the fees charged by sponsors vary from sponsor to sponsor and are negotiated between the sponsor and the participant (without any involvement by or benefit to employers like Grand America).

With the agreement of their sponsor, which remains responsible for participants while they are in the United States and must monitor their participation in the program, Plaintiffs participated in an internship program at Grand America.  Plaintiffs finished their internships almost two years ago and concede that they were paid well above the minimum wage for all hours worked.  Plaintiffs also do not allege that they voiced any concern about their internships to their sponsor (who could remove them from Grand America immediately).  Instead, Plaintiffs have filed this putative class action lawsuit, seeking a payout from Defendants[3] based on

---

[2] Plaintiffs recently filed Consents to Join on behalf of Madelyn Nobel Breenan [Dkt. 13], Marvin Bryan Occenola Salazar [Dkt. 14], Abby Mariel Dignos Grondahl [Dkt. 15], Homer Tolentino Fernando [Dkt. 21], and Johnlery T. Blanco [Dkt. 22] purporting to add these individuals as additional plaintiffs.  However, no new allegations have been made regarding any of these individuals.

[3] Curiously, Plaintiffs chose to sue only Grand America and Sinclair and not their visa sponsor who is actually granted the visa by the State Department, recruits the applicants, charges and collects any fees for its own benefit, arranges travel, supervises participants while in the United States, and determines with which employers participants are placed.  *See* Section III.A.1, *infra*. Plaintiffs made this decision even though the sponsor would be subject to the jurisdiction of this Court and the alleged misrepresentations in Plaintiffs' Training/Internship Placement Plans

purported violations of the FLSA's minimum wage requirements (First Claim), Civil RICO

(Second Claim), Discrimination Based on Race, Ethnicity, and Ancestry in Violation of 42

U.S.C. § 1981 (Third Claim), and the Trafficking Victims Protection Act (Fourth Claim).

Though Defendants vigorously dispute the merits of each of these claims, they presently move to

dismiss only the First and Second Claims for FLSA and RICO because the complaint fails to

adequately plead these claims.

Courts "require[] a higher degree of specificity of pleading under the FLSA . . . in a class

action, for claims that the wage rate should be reduced because of expenses that were not

sufficiently reimbursed." *Darrow v. WKRP Mgmt., LLC*, No. 09-CV-01613-CMA-BNB, 2010

WL 1416799, at *2 (D. Colo. Apr. 6, 2010) (citing *Wass v. NPC Int'l, Inc.*, No. 09–2254, 2010

WL 715250, at *15 (D. Kan. March 2, 2010)). Additionally, "the threat of treble damages and

injury to reputation which attend RICO actions justify requiring [a] plaintiff to frame its

pleadings in such a way that will give the defendant, and the trial court, clear notice of the factual

basis of the predicate acts." *Cayman Expl. Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357,

1362 (10th Cir. 1989) (emphasis added).

Plaintiffs utterly fail to meet the heightened pleading standards for their FLSA and RICO

claims, even when construing Plaintiffs' alleged facts "in the light most favorable to the

---

(T/IPP) are strikingly similar to representations that the sponsoring organization Alliance Abroad Group ("AAG") made in the same T/IPPs. (*Compare* Compl. at ¶ 5.21, *with*, *id.*, Ex. 2 at p. 2; *id.*, Ex. 3 at p. 2; *id.*, Ex. 4 at p. 2; & *id.*, Ex. 5 at p. 2.) Plaintiffs' posturing is further notable since AAG signed all four of the T/IPPs at issue, while Plaintiffs recognize that Defendants signed only two of the four T/IPPs. (*Id.* ¶ 5.21, n. 1.) Though Plaintiffs allege that "Defendants were required to sign the document before submitting them to the State Department and did submit the internship plans to the State Department," they conspicuously fail to allege that Defendants actually signed the documents. (*Id.*)

Plaintiff." *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1178 (10th Cir. 2012). With respect to their FLSA claim, Plaintiffs fail to provide sufficient factual allegations that Plaintiffs incurred any expenses that were primarily for Defendants' benefit or convenience. Nor have Plaintiffs adequately alleged that Plaintiffs' alleged payment of any such expenses resulted in Plaintiffs effectively receiving less than minimum wage at unspecified times during their internships at the Grand America Hotel. Plaintiffs also fail to adequately allege any underlying "racketeering acts" of fraud in foreign labor contracting, mail fraud, and wire fraud that could possibly support their RICO claim—particularly given the heightened pleading standard required under Rule 9(b).

Counts I and II of Plaintiffs' Complaint should be dismissed.

## II.   <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 12(b)(6), a cause of action must be dismissed if it fails "to state a claim upon which relief can be granted." Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S.662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. While "a court must accept as true all of the allegations contained in a complaint," it should not do so for mere "legal conclusions." *Id.* Federal Rule of

Civil Procedure 9(b) provides that "[i]n all averments of fraud…, the circumstances constituting the fraud…shall be stated with particularity." Fed. R. Civ. Proc. 9(b).

These pleading requirements serve two important purposes. First, they "ensure[] that defendants know the actual grounds of the claim against them," which are necessary for the defendants to prepare a defense. *Bryson v. Gonzales*, 534 F.3d 1282, 1287 (10th Cir. 2008) (quotations omitted); *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (Rule 8 requires factual allegations sufficient to give defendant "fair notice of what the claim is and the grounds upon which it rests" (internal quotations omitted)). Second, the pleading requirements "avoid[] ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." *Bryson*, 534 F.3d at 1287 (quotations omitted).

III.  **ARGUMENT**

A.  **Plaintiffs' Claim for Failure to Pay Minimum Wage in Violation of the Fair Labor Standards Act (First Claim for Relief) Should Be Dismissed Since It Rests on Purely Conclusory Allegations.**

Courts recognize that an employee may have a FLSA claim if the employee is not properly reimbursed for certain expenses "that are primarily for the benefit or convenience of the employer," to the extent that the employee's effective wage, after deducting such expenses, falls beneath the minimum wage. *See Solis v. A Touch of Glass Enterprises, Inc.* (D.N.M., Mar. 23, 2010, No. CV 07-01289 MV/LFG) 2010 WL 11597440, at *5–6. However, courts "require[] a higher degree of specificity of pleading under the FLSA . . . in a class action, for claims that the wage rate should be reduced because of expenses that were not sufficiently reimbursed."

5

*Darrow v. WKRP Mgmt., LLC*, No. 09-CV-01613-CMA-BNB, 2010 WL 1416799, at *2 (D.

Colo. Apr. 6, 2010) (citing *Wass v. NPC Int'l, Inc.*, No. 09–2254, 2010 WL 715250, at *15

(D.Kan. March 2, 2010)). "[C]onclusory . . . speculative" allegations will not do. *Wass v. NPC

Int'l, Inc.*, 688 F. Supp. 2d 1282, 1289 (D. Kan. 2010).

To sustain a federal minimum wage claim based on an employer allegedly failing to

reimburse an employee for certain expenses, an employee first must establish that an expense at

issue is primarily for the benefit or convenience of the employer or otherwise reimbursable.

"Generally, DOL regulations are entitled to judicial deference, and are the primary source of

guidance for determining the scope and extent of exemptions to the FLSA." *Wass* at 1285.

Thus, a determination of whether an expense paid by an employee is "primarily for the benefit or

convenience of the employer" or otherwise reimbursable generally requires an examination of an

underlying statute or regulation. *See, e.g. id.* at 1285 (examining 29 C.F.R. § 531.35, among

several other regulations).

Second, plaintiffs must allege specific facts to establish the actual hourly rate that they

received for work and the amount and nature of expenses for which they seek reimbursement—

such that a Court could properly determine whether the plaintiffs' wages for a particular time

frame fell beneath minimum wage after deducting the expenses at issue. In *Wass,* for example,

the Court dismissed the plaintiffs' federal minimum wage claim where plaintiffs merely alleged

that they were paid "approximately" minimum wage and where they alleged "only conclusorily

that the deficiency in reimbursements did bring their wages below the legal minimum." *Id.* at

1288. *See also Darrow v. WKRP Mgmt., LLC*, No. 09-CV-01613-CMA-BNB, 2010 WL

1416799, at *2 (D. Colo. Apr. 6, 2010) (granting motion to dismiss federal minimum wage claim

in case involving pizza delivery drivers where plaintiff "d[id] not allege what they were paid on an hourly basis, what amounts they expended delivering pizzas, what they were reimbursed per-delivery, or any other facts that would allow this Court to infer that [p]laintiffs have actually received less than minimum wage"); *Smith v. Pizza Hut, Inc.*, 694 F. Supp. 2d 1227, 1230 (D. Colo. 2010) (granting motion to dismiss federal minimum wage claim of pizza delivery drivers on grounds similar to *Darrow*).

Here, Plaintiffs allege that Defendants violated FLSA because Plaintiffs' "effective" wages were allegedly less than minimum wage "for a substantial part of their employment," if unknown fees that Defendants allegedly "required [Plaintiffs] to pay to obtain their visas and travel" (which fees are actually charged by or arranged by visa sponsors) were deducted from their wages.[4]  (Compl. ¶ 8.8.)  However, Plaintiffs' FLSA claim must be dismissed since they

---

[4] Throughout their Complaint, Plaintiffs make vague and inconsistent references to other types of costs they may have allegedly paid, which may or may not overlap with fees "to obtain their visas and travel." *See, e.g.*, Compl. ¶ 1.5 ("Plaintiffs paid recruitment fees to secure the promised internships and travel costs to the United States"); *id.* ¶ 1.10 ("Grand America did not pay Plaintiffs at least minimum wage for all hours worked when factoring in fees and costs charged to Plaintiffs before or during the first work week that were primarily for the benefit of the employer, including the recruitment fees Plaintiffs were required to pay for the internships and travel expenses"); *id.* ¶¶ 5.39, 5.60, 5.79 & 5.102 (alleging that each Plaintiff paid fees of at least $3,000 to obtain his or her internship at Defendants' Grand America Hotel, "plus travel expenses").  However, Plaintiffs do not specifically incorporate these references into their FLSA claim to expressly seek recovery of such alleged fees, *see id.* ¶¶ 8.1–8.11.  It is not Defendants' burden to guess the scope of Plaintiffs' claims, as Defendants should not be forced to "search through the several paragraphs of [introductory allegations]" and "attempt to match the factual assertions" with the elements of an underlying claim "to determine if the complaint states a claim for relief." *Hart v. Salois*, 605 F. App'x 694, 701 (10th Cir. 2015) (citing *Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368, 371 (10th Cir.1989)).

fail to allege adequate facts to show that the alleged expenses were primarily for Defendants'

benefit or convenience—nor do they provide facts to establish that their effective wages dropped

beneath minimum wage for any particular time frame after deducting the expenses.

1. <u>Plaintiffs Fail to Adequately Allege Why a J-1 Intern's Fees "to Obtain . . . Visas and Travel" Are Primarily for the Benefit or Convenience of an Employer or Otherwise Reimbursable.</u>

Although Plaintiffs conclusorily allege that fees that Defendants allegedly required

Plaintiffs to pay for visas and travel "were principally for the benefit of Defendants," (*id.*),

nowhere do Plaintiffs allege any facts to support this bare legal conclusion or that would

otherwise establish that Plaintiffs' alleged costs were legally reimbursable.  Indeed, despite

purporting to provide background on how the J-1 visa program operates (Compl. ¶¶ 4.1-4.5),

Plaintiffs omit vital facts (of which this Court may take judicial notice) regarding the key role

played by sponsors, which negotiate and collect any fees charged to participants for their own

benefit (not employers like Grand America).  These sponsors recruit participants into the

program and then decide with which employer their participant should be placed (often choosing

among dozens of possible employers).  As the State Department's guidance to program

applicants[5] and the applicable regulations provide (emphasis added):

- "<u>Sponsors</u> are responsible for selecting participants, as well as supporting and monitoring them during their entire stay."
- "<u>Sponsors</u> charge participants program fees.  Fees vary from sponsor to sponsor. Participants are encouraged to obtain a breakdown of all costs and fees from multiple sponsors before committing to a program."
- Government fees are also required for participation in the program.

---

[5] This guidance can be found at https://app.box.com/s/uk1jn6kbcza66yinapngm05i69d8lc3q.  A copy is also attached as Exhibit A.

- When recruiting participants, sponsors are also required to inform participants that their wages or stipend may not cover all of their expenses. *See* 22 C.F.R. § 62.9(d)(3) ("Program recruitment information and materials also must make clear to prospective exchange visitors in the exchange categories with a work component that their stipend or wages might not cover all of their expenses and that they should bring additional personal funds.")
- Although sponsors may use third parties, they remain ultimately responsible for compliance with the J-1 program. *See* 22 C.F.R. § 62.22(g).[6]

In light of these indisputable facts, of which the Court may take judicial notice, Plaintiffs' allegations that Defendants required certain fees from Plaintiffs are misleading and fail to meet the required pleading standard.

Plaintiffs not only omit vital facts, they also fail to allege any applicable regulatory basis for requiring employers to pay for J-1 workers' costs of obtaining visas and travel (even though participants negotiated and paid those fees to sponsors who could have placed the participants with any number of potential employers). Defendants are unaware of *any* regulation that expressly requires a sponsoring organization of a J-1 intern to pay for a J-1 worker's visas and travel costs. Defendants also are unaware of any binding cases in which courts have held that a

---

[6] 22 C.F.R. § 62.22(g) provides: "Sponsors may engage third parties (including, but not limited to host organizations, partners, local businesses, governmental entities, academic institutions, and other foreign or domestic agents) to assist them in the conduct of their designated training and internship programs. Such third parties must have an executed written agreement with the sponsor to act on behalf of the sponsor in the conduct of the sponsor's program. This agreement must outline the obligations and full relationship between the sponsor and third party on all matters involving the administration of their exchange visitor program. A sponsor's use of a third party does not relieve the sponsor of its obligations to comply with and to ensure third party compliance with Exchange Visitor Program regulations. Any failure by any third party to comply with the regulations set forth in this Part or with any additional terms and conditions governing Exchange Visitor Program administration that the Department may from time to time impose will be imputed to the sponsors engaging such third party." 22 C.F.R. § 62.22(g) (emphasis added).

J-1 visa intern's costs of obtaining visas or travel to the United States generally are "primarily for the benefit or convenience of their employer," or otherwise reimbursable under FLSA in situations where a plaintiff's effective wage would fall beneath minimum wage after deducting visa or travel expenses.

Because Plaintiffs only conclusorily allege that their alleged visa and travel fees were "principally for the benefit of Defendants," Plaintiffs have failed to adequately allege that their alleged visa and travel costs are primarily for the benefit or convenience of Defendants, or otherwise reimbursable under FLSA.

> 2. Even If a J-1 Intern's Costs for Visas and Travel Were Construed as Primarily Benefiting an Employer, or as Otherwise Being Reimbursable as a Matter of Law, Plaintiffs' FLSA Claim Should Be Dismissed for Failing to Adequately Allege That Plaintiffs' Effective Wages Fell Beneath Minimum Wage after Deducting any Such Visa or Travel Costs.

A "defendant would not be in violation of the minimum wage laws merely by failing to reimburse plaintiffs for expenses; rather, such failure must be in an amount great enough to bring plaintiffs' wages for a particular time period below the legal minimums." *Wass v. NPC Int'l, Inc.*, 688 F. Supp. 2d 1282, 1288 (D. Kan. 2010). Thus, a plaintiff must allege "facts from which a plausible claim may be inferred," such as the worker's hourly rate and the amount of expenses, and a "particular time period." *Id.*

Even if a J-1 intern's visa and travel costs were construed as primarily benefiting an employer or otherwise being legally reimbursable, Plaintiffs' FLSA claim should be dismissed because their allegations, if taken as true, provide no plausible basis for concluding that their effective wages fell beneath minimum wage at any particular period, after deducting any visa

and travel costs.  As to alleging an actual hourly rate, Plaintiffs allege, at most, that "Defendants paid Plaintiffs and FLSA Class members *minimum wage or above* for their hourly work once they arrived at the hotel."  (Compl. ¶ 8.8 (emphasis added).)  However, these vague allegations, which include a disjunctive "or," are insufficient since they suggest that Plaintiffs and FLSA Class members could have been earning minimum wage *or* a much higher hourly wage.  As such, any deductions of expenses from the Plaintiffs' wages would not necessarily have resulted in an effective wage beneath the minimum wage. *See Wass* at 1289 (D. Kan. 2010) (holding that plaintiffs allegations that they received "approximately" minimum wage were inadequate for sustaining minimum wage claim).

Likewise fatal to Plaintiffs' claim is their failure to adequately allege the *amount* of any allegedly reimbursable expenses.  As purported grounds for their claim, Plaintiffs allege that "the fees Defendants required them to pay to obtain their visas and travel must be deducted from their wages."  (Compl. ¶ 8.8.)  Yet nowhere in the Complaint do Plaintiffs adequately plead the amount of these expenses.  At most, Plaintiffs allege that each Plaintiff paid fees or costs "of at least $3,000 to obtain [his or her] internship at Defendants' Grand America Hotel," "plus travel expenses." (*Id.* ¶¶ 5.39, 5.60, 5.79 & 5.102).  Those general allegations of approximations are insufficient to state a claim that Plaintiffs received less than minimum wage. *See Wass* at 1289 (D. Kan. 2010).  This is not a mere technicality.  Because the fees were paid to sponsors and did not benefit Defendants, Defendants are not aware of the amount of the fees (although Plaintiffs must be).  Accordingly, failing to plead this information prevents Defendants from determining whether Plaintiffs' wages remained above the minimum wage even if any fees are included in the calculation, which would defeat Plaintiffs' claim.

For these reasons, Plaintiffs' FLSA claim should be dismissed.

### B. Plaintiffs' Second Claim Alleging Violation a Civil RICO Violation Under 18 U.S.C. § 1964(c) Should Be Dismissed for Failing to Adequately Plead any Predicate Acts of Racketeering Activity.

"To survive a Rule 12(b)(6) motion, a civil RICO claim must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Cayman Expl. Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir. 1989) (internal citation and quotations omitted); *accord Sorensen v. Polukoff*, No. 2:18-CV-67 TS, 2018 WL 2012738, at *3 (D. Utah Apr. 30, 2018). "Racketeering activity" is defined in 18 U.S.C. § 1961(1)(B) as any "act which is indictable" under certain provisions of federal law, which includes section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), and section 1351 (relating to fraud in foreign labor contracting). 18 U.S.C. § 1961(1)(B).

It is well established that a RICO claim should be dismissed if the predicate racketeering activity is not adequately pleaded. *See, e.g.*, *Sorensen v. Polukoff*, No. 2:18-CV-67 TS, 2018 WL 2012738, at *6 (D. Utah Apr. 30, 2018) (dismissing RICO claim where some predicate acts were not adequately pleaded); *Kharb v. Ericsson, Inc.*, No. 4:17-CV-619, 2019 WL 1198399, at *7 (E.D. Tex. Mar. 14, 2019) (dismissing RICO claim where underlying predicate act was not adequately pleaded). The scrutiny afforded to the pleading of a RICO claim is due at least in part to "the threat of treble damages and injury to reputation which attend RICO actions [which] justify requiring [a] plaintiff to frame its pleadings in such a way that will give the defendant, and the trial court, clear notice of the factual basis of the predicate acts." *Cayman Expl. Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir. 1989).

The predicate acts alleged in the complaint are violations of the fraud in foreign labor contracting statute and violations of the mail and wire fraud statutes.  (Compl. ¶ 9.3.)  Rule 9(b)'s particularity requirement "clearly applies to RICO . . . claims that are premised on fraudulent conduct."  *Cook v. Zions First Nat. Bank*, 645 F. Supp. 423, 425 (D. Utah 1986); *accord Cayman* at 1362.  This includes claims based on mail and/or wire fraud, as well as claims for fraud in foreign labor contracting.  *See, e.g.*, *Cayman* at 1362 (10th Cir. 1989) ("we hold that Rule 9(b) requires particularity in pleading RICO mail and wire fraud"); *Sorensen* at *5 (D. Utah Apr. 30, 2018) (dismissing RICO claim predicated on mail fraud and wire fraud); *Kharb* at *8, n.5 (dismissing RICO claim where predicate claim of labor in contracting was inadequately pleaded and recognizing that a plaintiff would need to "first satisfy Rule 9(b) before they [would] be allowed to conduct discovery").  Rule 9(b) provides that "[i]n all averments of fraud…, the circumstances constituting the fraud…shall be stated with particularity." Fed. R. Civ. Proc. 9(b). "To plead fraud with the required particularity, a plaintiff typically must allege the 'time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'"  *Adams v. Wells Fargo Bank, N.A. for SASCO Mortgage Loan Trust 2005-WF3*, 2017 WL 4083153 (D. Utah Sept. 14, 2017) (citing *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997).

1. <u>Plaintiffs Fail to Adequately Allege any Predicate Acts of Fraud in Foreign Labor Contracting.</u>

To state a violation of fraud in foreign labor contracting in the context of allegedly hiring foreign persons for employment in the United States, a plaintiff must allege that someone: "(1) recruit[ed], solicit[ed], or hire[d] a person outside the United States, or causes another person to

13

do so, or attempts to do so; (2) [did] so by means of materially false or fraudulent pretenses, representations or promises regarding that employment; and (3) act[ed] knowingly and with intent to defraud." *United States v. Bart*, 888 F.3d 374, 378 (8th Cir.), cert. denied, 139 S. Ct. 266, 202 L. Ed. 2d 133 (2018), reh'g denied, 139 S. Ct. 588, 202 L. Ed. 2d 421 (2018); 18 U.S.C. § 1351.  As with other fraud-based RICO acts, a predicate act of fraud in foreign labor contracting is subject to Rule 9(b)'s pleading requirements and must contain allegations of "the who, what, when, and where" of the underlying acts. *See Kharb* at *8, n.5 (E.D. Tex. Mar. 14, 2019).

Plaintiffs utterly fail to make any factual allegations that could plausibly establish that Defendants engaged in fraud in foreign labor contracting under 18 U.S.C. §1351.  At most, Plaintiffs summarily allege in their claim that "Defendants and the Enterprise engaged in the fraudulent schemes, acts, and misrepresentations described above, which violate the fraud in foreign labor contracting statute." (Compl. ¶ 9.3.)  But a proper pleading "requires more than" such "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Though Plaintiffs non-specifically reference alleged "fraudulent schemes, acts, and misrepresentations describe above," they provide no further allegations sufficient to provide "clear notice of the of the factual basis of the predicate acts." *Cayman Expl. Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir. 1989).  To the extent Plaintiffs contend that there may be supporting factual allegations in other sections of their Complaint, Plaintiffs do not expressly incorporate specific allegations to their RICO claim, (*see* Compl. ¶¶ 9.1–9.6), and Defendants cannot be required to "search through the several paragraphs of the plaintiffs' [i]ntroductory [a]llegations and attempt

14

to match the factual assertions with the elements of all subsections of the RICO statute to determine if the complaint states a claim for relief." *Hart v. Salois*, 605 F. App'x 694, 701 (10th Cir. 2015) (internal citations and quotations omitted).  Nor should Defendants be "required to piece together . . . [P]laintiffs' complaint." *Id.*

Regardless, <u>nowhere</u> in the Complaint do Plaintiffs clearly allege even the bare elements of fraud in labor contracting.  This is especially problematic where Plaintiffs fail to allege that Defendants/the Enterprise "act[ed] knowingly and with intent to defraud."  18 U.S.C. § 1351(a).  Even to the extent that Plaintiffs may argue that their scattered allegations of Defendants making certain "certifications" to the State Department about following the T/IPPs support their allegation in paragraph 5.126 of the Complaint of Defendants making "fraudulent statements," nowhere do Plaintiffs adequately allege any facts sufficient to form a plausible basis that such statements were "fraudulent" as a matter of law.  In determining whether any fraud has occurred, Courts recognize that promises of future performance are not actionable as fraud absent proof that the defendants "did not intend to perform the promise and made the representation for the purpose of deceiving the promisee." *See Andalex Resources, Inc. v. Myers*, 871 P.2d 1041, 1047 (Utah Ct. App. 1994); *Jones & Trevor Marketing, Inc. v. Lowry*, 2010 UT App 113, ¶ 12, 233 P.3d 538, 544.  Even presuming as true that T/IPPs were not always followed precisely, Plaintiffs fail to establish any underlying fraudulent statements or fraud, since the plans in the T/IPPs referred to future, as opposed to present, conditions, and nowhere do Plaintiffs adequately allege that Defendants did not intend to comply with the plans at the time the T/IPPs were communicated to Plaintiffs.

Thus, Plaintiffs fail to allege any predicate acts of fraud in foreign labor contracting.

2.  <u>Plaintiffs Also Fail to Adequately Allege any Predicate Acts of Mail/Wire Fraud.</u>

"In order to state a claim of mail fraud under 18 U.S.C. § 1341," a plaintiff "must allege (1) the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises, and (2) use of the United States mails for the purpose of executing the scheme." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 892 (10th Cir. 1991). "The elements of wire fraud under 18 U.S.C. § 1343 are similar but require that the defendant use interstate wire, radio or television communications in furtherance of the scheme to defraud." *Id.*

Both "[m]ail and wire fraud . . . require an underlying fraud, which, in common law, consists of (1) a representation; (2) that is false; (3) that is material; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent it be acted on; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance; (8) the hearer's right to rely on it; and (9) injury," (though a "plaintiff alleging federal mail or wire fraud as a RICO predicate, however, need not allege and prove the reliance element"). *Just Us Realtors, LLC v. Nudge, LLC*, No. 2:18-CV-00128-TC-CMR, 2019 WL 2526731, at *7 (D. Utah June 19, 2019) (internal citations omitted). To meet Rule 9(b)'s particularity requirements in the context of mail/wire fraud, a plaintiff's allegations must include "the time, place, and contents of the alleged misrepresentations as well as the identity of the persons making the misrepresentations." *Wood v. World Wide Ass'n of Specialty Programs & Sch., Inc.*, No. 2:06-CV-708 TS, 2007 WL 1295994, at *4 (D. Utah Apr. 30, 2007).

Plaintiffs' allegations regarding any mail or wire fraud are woefully inadequate, as they do not even superficially allege "the use of the United States mails," nor of "interstate wire, radio or television communications" for the purpose of executing any scheme to defraud. At most, Plaintiffs vaguely allege that that "sending the documents in furtherance of this fraud to the State Department and to Plaintiffs and those similarly situated constituted wire and mail fraud pursuant to 18 U.S.C. § 1341 and 18 U.S.C. § 1343." (Compl. ¶ 5.127.) This in no way provides "clear notice" to Defendants of their specifically using any United States mails or interstate wire, radio or television communications in any way that could possibly provide the basis of any RICO claim against them based on mail or wire fraud.

Plaintiffs' allegations further suffer by failing to adequately allege any underlying fraud to plead "the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises"—let alone with the requisite particularity of Rule 9(b). At most, Plaintiffs make reference to their conclusory allegations of "foreign labor contracting." (*See* Compl. ¶¶ 5.126 & 5.127.) However, since Plaintiffs' allegations of fraud in foreign labor are legally deficient for reasons discussed above, they likewise cannot form the basis of establishing any fraud for purposes of sustaining any predicate acts of mail/wire fraud.

Since Plaintiffs have not adequately pleaded any predicate acts of fraud in foreign labor contracting or mail/wire fraud, their RICO claim cannot be sustained as a matter of law and it should be dismissed.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Defendants' motion and dismiss Plaintiffs' First and Second Claims for Relief.

DATED this the 18th day of September 2019.

KUNZLER BEAN & ADAMSON, PC

*/s/ Matthew R. Lewis*
Matthew R. Lewis
R. Jeremy Adamson
Megan J. Nelson

*Attorneys for Defendant Grand America Hotels & Resorts, Inc. and Sinclair Services Company*

## CERTIFICATE OF SERVICE

On the date below written, the undersigned hereby certifies that a true and correct copy of the foregoing **DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AND SECOND CLAIMS FOR RELIEF** was filed with the Clerk of the Court using the CM/ECF system, which sent notifications of such filing to the following:

P. Alex McBean
Alex McBean Law Office
P.O. Box 1726
Bountiful, Utah 84011
Mcbean04@gmail.com
-and-
Alexander N. Hood
Towards Justice
1410 High Street, Ste 300
Denver, CO 80218
alex@towardsjustice.org
-and-
Laboni A. Hoq
Christopher M. Lapinig
Asian Americans Advancing Justice - Los Angeles
1145 Wilshire Blvd
Los Angeles, CA 90017
lhoq@advancingjustice-la.org
-and-
Erika L. Nusser
Beth E. Terrell
Terrell Marshall Law Group
936 N 34th Street, Ste 300
Seattle, WA 98103
enusser@terrellmarshall.com

*Attorneys for Plaintiffs*

DATED this the 18th day of September 2019.

/s/ Allie Orr
Allie Orr

19

# Exhibit A

# How to Apply to the Exchange Visitor Program

The Exchange Visitor Program provides countless opportunities for international candidates looking to travel and gain experience in the United States. The multifaceted programs enable foreign nationals to come to the United States to teach, study, conduct research, demonstrate special skills or receive on the job training for periods ranging from a few weeks to several years.

## Step 1



Determine which program is right for you. See program requirements comparison chart for an overview of each program category.

https://j1visa.state.gov/Program-Category-Requirements.pdf

## Step 2



Contact a designated sponsor directly to take part in one of its exchange programs. The sponsor will provide the participant with specific program and application requirements. Search designated sponsors: https://j1visa.state.gov/sponsor-search

Find sponsors that operate in your home country: https://j1visa.state.gov/sponsor-by-country

## Step 3



Sponsors are responsible for selecting participants, as well as supporting and monitoring them during their entire program.

## Step 4



Sponsors charge participants program fees. Fees vary from sponsor to sponsor. Participants are encouraged to obtain a breakdown of all costs and fees from multiple sponsors before committing to a program.

## Step 5



If you are accepted into an exchange visitor program, the program sponsor will issue you a Form DS-2019.

# Step 6

Pay the SEVIS (Student and Exchange Visitor Information System) fee at www.fmjfee.com/. You may want to print out your proof of payment for your own records.



# Step 7

Go to the U.S. Department of State website ceac.state.gov/genniv to fill out an Online Nonimmigrant Visa Application Form DS-160 and to pay the visa application fee of $160. Consult the website of the U.S. embassy or consulate where you plan to apply for instructions on how to pay.



# Step 8

After you pay the visa application fee, schedule your interview – the earlier the better! Consult the website of the U.S. embassy or consulate where you plan to apply for instructions on how to schedule it.



# Step 9

On the day of your interview, bring the following documents: an original Form DS-2019; Form DS-160 confirmation page; passport; photo; and visa application fee receipt. Consult the website of the U.S. embassy or consulate where you plan to apply to check whether additional documents are needed.



# Step 10

The interviewing officer will inform you at the end of your interview whether your visa is approved or denied. If approved, the interviewing officer will tell you when you should expect to receive your visa.

Continue to work with your sponsor to prepare to travel to the United States.

