Matthew R. Lewis (#7919)
R. Jeremy Adamson (#12818)
Megan J. Nelson (#15691)
**KUNZLER BEAN & ADAMSON, PC**
50 W. Broadway, 10th Floor
Salt Lake City, Utah 84101
Telephone: 801-994-4646
mlewis@kba.law
jadamson@kba.law
mnelson@kba.law

*Attorneys for Defendants Grand America Hotels & Resorts, Inc. and Sinclair Services Company*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JANN DESCANZO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GRAND AMERICA HOTELS & RESORTS, INC., et al., <br><br> Defendants. | **DEFENDANTS' MOTION TO DISMISS CLAIMS I AND II OF PLAINTIFFS' FIRST AMENDED COMPLAINT** <br><br> Case No. 2:19-CV-00443-DB <br><br> Judge Dee Benson |

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Grand America Hotels & Resorts, Inc. ("Grand America"), and Sinclair Services Company ("Sinclair") (collectively, "Defendants") hereby submit this *Motion to Dismiss* requesting that the Court dismiss Claims I and II of Plaintiffs' First Amended Complaint ("FAC") for failing to state a claim upon which relief may be granted.

## INTRODUCTION

The J-1 Program has been in existence for nearly 60 years. During that time, millions of individuals from foreign countries have participated in the program. As detailed in State Department regulations, independent sponsors (<u>not</u> employers) are responsible for screening and selecting program participants. Those sponsors negotiate, collect and retain any fees paid by participants. Sponsors are required to inform participants that their wages may not cover the fees charged by sponsors – an unnecessary requirement if the employer was required to reimburse those fees.[1]

Given these facts and applicable regulations, which guide a court's decision whether fees paid to a third party should be considered wages, it is not surprising that there is no known case supporting Plaintiffs' theory that fees paid to a sponsor must be reimbursed by an employer as part of a J-1 participant's wages. Plaintiffs' novel argument to the contrary is not only legally unsupported but would open the floodgates of wage actions and fundamentally alter the J-1 program.

Courts "require[] a higher degree of specificity of pleading under the FLSA . . . in a class action, for claims that the wage rate should be reduced because of expenses that were not sufficiently reimbursed." *Darrow v. WKRP Mgmt., LLC*, No. 09-CV-01613-CMA-BNB, 2010 WL 1416799, at *2 (D. Colo. Apr. 6, 2010) (citing *Wass v. NPC Int'l, Inc.*, No. 09–2254, 2010 WL 715250, at *15 (D. Kan. March 2, 2010)). Additionally, "the threat of treble damages and

---

[1] Plaintiffs' FAC omits any discussion of the fundamental role played by sponsors and thereby paints an inaccurate picture of the J-1 Program and an employer's role in it.

2

injury to reputation which attend RICO actions justify requiring [a] plaintiff to frame its pleadings in such a way that will give the defendant, and the trial court, <u>clear notice of the factual basis of the predicate acts</u>." *Cayman Expl. Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir. 1989) (emphasis added).

Plaintiffs utterly fail to meet the heightened pleading standards for their FLSA and RICO claims. Plaintiffs' FLSA claim must be dismissed because Plaintiffs fail to provide adequate factual allegations to support their assertions that Plaintiffs incurred any expenses that were primarily for Defendants' benefit or convenience. At most, Plaintiffs rely on conclusory, speculative allegations about what the status of such expenses would have been if Plaintiffs, hypothetically, had been H-2B visa holders rather than J-1 interns. Plaintiffs' RICO claim also must be dismissed because it is based on Plaintiffs' inadequate FLSA allegations and because it is preempted by the FLSA.

## **BACKGROUND**[2]

1. The J-1 Program began in 1961. (FAC 4.1)

2. In 2018 alone, more than 300,000 individuals participated in the J-1 program. *See* https://j1visa.state.gov/basics/facts-and-figures/#participants (last visited November 1, 2019.)

3. Plaintiffs Jann Descanzo ("Descanzo"), Veronica Bondoc ("Bondoc"), Glen Segundino ("Segundino"), and Marianne Ponio ("Ponio") (collectively, "Plaintiffs") are citizens

---

[2] Defendants accept the allegations in the First Amended Complaint for purposes of this motion only.

3

of the Philippines who allegedly paid fees to their sponsor, Alliance Abroad Group ("Alliance"), in order to participate in a J-1 visa internship program.[3] (FAC 1.1)

4. With the agreement of their sponsor, which remains responsible for participants while they are in the United States and must monitor their participation in the program, Plaintiffs participated in an internship program at the Grand America Hotel. (FAC 1.1, Ex. A.)

5. The Training/Internship Training Plan ("T/IPP") for plaintiffs included a section on compensation. *See* Exs. 2-5. That section refers to an hourly wage only and does not indicate that plaintiffs would be reimbursed for any fees or expenses. (*Id.*)

6. Plaintiffs concede that they were paid the hourly amount promised in the T/IPP, which was well above the minimum wage. (FAC 8.9)

7. Plaintiffs have filed this putative class action lawsuit, seeking a payout from Defendants[4] based on purported violations of the FLSA's minimum wage requirements (First Claim), Civil RICO (Second Claim), Discrimination Based on Race, Ethnicity, and Ancestry in

---

[3] After filing their initial Complaint, Plaintiffs filed Consents to Join on behalf of Madelyn Nobel Breenan [Dkt. 13], Marvin Bryan Occenola Salazar [Dkt. 14], Abby Mariel Dignos Grondahl [Dkt. 15], Homer Tolentino Fernando [Dkt. 21], Johnlery T. Blanco [Dkt. 22], Aeschylus Isiash Bardelas Austria [Dkt. 30], and Justine Gail Alavar [Dkt. 31], purporting to add these individuals as additional plaintiffs. However, no additional allegations have been made regarding any of these individuals.

[4] Curiously, Plaintiffs chose to sue only Grand America and Sinclair and not their visa sponsor which is actually granted the visa by the State Department, recruits the applicants, charges and collects fees for its own benefit, supervises participants while in the United States, and determines with which employers participants are placed. *See* Section II, *infra*. Plaintiffs made this decision even though the sponsor would be subject to the jurisdiction of this Court and the alleged misrepresentations in Plaintiffs' Training/Internship Placement Plans (T/IPP) are strikingly similar to representations that the sponsoring organization Alliance Abroad Group ("AAG") made in the same T/IPPs. (*Compare* FAC at ¶ 5.25, *with*, *id.*, Ex. 2 at p. 2; *id.*, Ex. 3 at p. 2; *id.*, Ex. 4 at p. 2; & *id.*, Ex. 5 at p. 2.)

4

Violation of 42 U.S.C. § 1981 (Third Claim), and the Trafficking Victims Protection Act (Fourth Claim).

8.  Though Defendants vigorously dispute the merits of each of these claims, their present motion is based solely on Plaintiffs' failure to adequately plead Plaintiffs' First and Second Claims for violations of FLSA and RICO.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a cause of action must be dismissed if it fails "to state a claim upon which relief can be granted." Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. While "a court must accept as true all of the allegations contained in a complaint," it should not do so for mere "legal conclusions." *Id.* Federal Rule of Civil Procedure 9(b) provides that "[i]n all averments of fraud…, the circumstances constituting the fraud…shall be stated with particularity." Fed. R. Civ. Proc. 9(b).

These pleading requirements serve two important purposes. First, they "ensure[] that defendants know the actual grounds of the claim against them," which are necessary for the

defendants to prepare a defense." *Bryson v. Gonzales*, 534 F.3d 1282, 1287 (10th Cir. 2008) (quotations omitted); *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (Rule 8 requires factual allegations sufficient to give defendant "fair notice of what the claim is and the grounds upon which it rests" (internal quotations omitted)). Second, the pleading requirements "avoid[] ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." *Bryson*, 534 F.3d at 1287 (quotations omitted).

## ARGUMENT

I. **PLAINTIFFS' FIRST CLAIM FOR FAILURE TO PAY MINIMUM WAGE IN VIOLATION OF THE FLSA SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO ADEQUATELY ALLEGE FACTS TO SUPPORT THE CONTENTION THAT ANY PURPORTED TRAVEL, RECRUITING, AND VISA COSTS WERE PRIMARILY FOR THE BENEFIT OR CONVENIENCE OF DEFENDANTS.**

   A. Plaintiffs Fail to Allege Adequate Facts to Support Their Claim and Instead Attempt to Rely on Conclusory and Speculative Allegations About Hypothetical Expenses Had They Been H-2B Visa Holders Rather Than J-1 Interns.

Courts recognize that an employee may have a FLSA claim if the employee is not properly reimbursed for certain expenses "that are primarily for the benefit or convenience of the employer," to the extent that the employee's effective wage, after deducting such expenses, falls beneath the minimum wage. *See Solis v. A Touch of Glass Enterprises, Inc.* (D.N.M., Mar. 23, 2010, No. CV 07-01289 MV/LFG) 2010 WL 11597440, at *5–6. However, courts "require[] a higher degree of specificity of pleading under the FLSA . . . in a class action, for claims that the wage rate should be reduced because of expenses that were not sufficiently reimbursed." *Darrow v. WKRP Mgmt., LLC*, No. 09-CV-01613-CMA-BNB, 2010 WL 1416799, at *2 (D.

6

Colo. Apr. 6, 2010) (citing *Wass v. NPC Int'l, Inc.*, No. 09–2254, 2010 WL 715250, at *15 (D.Kan. March 2, 2010)). "[C]onclusory . . . speculative" allegations will not do. *Wass v. NPC Int'l, Inc.*, 688 F. Supp. 2d 1282, 1289 (D. Kan. 2010).

Courts recognize that "[g]enerally, DOL regulations are entitled to judicial deference, and are the <u>primary</u> source of guidance for determining the scope and extent of exemptions to the FLSA." *Wass* at 1285 (emphasis added) (citing *Spradling v. City of Tulsa, Okl.*, 95 F.3d 1492, 1495 (10th Cir. 1996)). Thus, a determination of whether an expense paid by an employee is "primarily for the benefit or convenience of the employer" or otherwise reimbursable generally requires an examination of an underlying statute or regulation. *See, e.g. id.* at 1285 (examining 29 C.F.R. § 531.35, among several other regulations).

Here, Plaintiffs allege that Defendants violated the FLSA because Plaintiffs' "effective" wages were less than minimum wage "for a substantial part of their employment," if certain "Recruiting Fees, Visa Fees, and Travel Costs" that Plaintiffs allegedly paid were deducted from their wages. (FAC ¶ 8.9.) Though Plaintiffs allege that such fees "were principally for the benefit of Defendants," (*id.*), nowhere do Plaintiffs allege any facts to support their bare legal conclusion.

Plaintiffs do not allege and Defendants are unaware of *any* regulation—including any DOL regulation—that requires an employer of a J-1 intern to pay for a J-1 worker's travel costs, recruiting fees, and visa costs or that otherwise supports Plaintiffs' argument that such costs are primarily for the benefit or convenience of the employer. *See Wass* at 1285 (citing *Spradling v. City of Tulsa, Okl.*, 95 F.3d 1492, 1495 (10th Cir. 1996)) (Courts recognize that "[g]enerally,

DOL regulations are entitled to judicial deference, and are the <u>primary</u> source of guidance for determining the scope and extent of exemptions to the FLSA" (emphasis added)). Defendants also are unaware of any binding case in which a court has held that a J-1 visa intern's travel costs, recruiting fees, and visa costs are "primarily for the benefit or convenience of their employer," or otherwise reimbursable under FLSA in situations where a plaintiff's effective wage would fall beneath minimum wage after deducting travel, recruiting, or travel expenses.

There are good reasons that no court has found that fees paid to a sponsor are not primarily for the benefit of an employer like the Grand America Hotel. Per State Department guidance, sponsors (<u>not</u> employers) are responsible for negotiating and collecting fees from participants. Plaintiffs do not allege that Defendants were involved in the negotiation or collection of fees or that Defendants received any portion of any fees paid. Rather, the T/IPPs, which were signed by Defendants and Plaintiffs indicated that the only compensation Plaintiffs would receive from the Grand America Hotel was the promised hourly wage. Plaintiffs agree that they received the promised wage (and overtime pay). Requiring Defendants to reimburse fees paid to a sponsor is not legally supported and would fundamentally alter the J-1 Program.

Plaintiffs rely exclusively on the conclusory allegation that the fees were principally for the benefit of Defendants merely because Defendants "<u>should have</u> used the H-2B program" instead of the J-1 internship program "to obtain workers to perform the menial labor Defendants required Plaintiffs and FLSA Class Members to perform," (FAC ¶¶ 6.7 (emphasis added); *see also id.* ¶¶ 5.60, 5.85, 5.114, 5.138), and because they allege that charging Recruiting Fees, Visa Fees, and Travel Costs violates 29 C.F.R. 503.16—a specific DOL regulation regarding the H-2B visa program. (*id.* ¶¶ 5.28–5.30). That conclusory assertion is fatally flawed because

8

Plaintiffs fail to allege any facts that would establish that Defendants "should have" used the H-2B program to obtain Plaintiffs' labor—or that otherwise support the assertion that the travel costs, recruiting fees, and visa fees were primarily for the benefit or convenience of the Defendants.

At most, Plaintiffs allege that Defendants were "required to use the H-2B visa program" because Defendants employed Plaintiffs "to perform low-wage menial work and did not provide a true internship with training and cultural experiences." (FAC ¶¶ 5.58, 5.83, 5.112, 5.136.) Yet even if those allegations were true, Plaintiffs provide no legal basis to support the assertion that employing Plaintiffs "to perform low-wage menial work" without "provid[ing] a true internship with training and cultural experiences" somehow triggers a specific H-2B regulation applying to J-1 workers.

      B. <u>Plaintiffs' FLSA Claim Fails Because Travel Costs, Recruiting Fees, and Visa Fees Are *Not* for the Primary Benefit and Convenience of the Defendants Under Applicable J-1 Regulations.</u>

Relevant J-1 regulations undermine Plaintiffs' assertion that <u>Defendants</u> were required to pay travel costs, recruiting fees, and visa costs. The J-1 internship program is overseen by sponsors. Despite purporting to provide background on how the J-1 visa program operates (FAC ¶¶ 4.1-4.5), Plaintiffs omit vital facts (of which this Court may take judicial notice) regarding the fundamental role played by sponsors. These sponsors recruit participants into the program and then decide with which employer their participant(s) should be placed. The State Department's guidance to program applicants and the applicable regulations provide as follows (emphasis added):

9

- "Sponsors screen and select their program participants according to the eligibility criteria for each program category." *See Eligibility and Fees*, EXCHANGE VISITOR PROGRAM, https://j1visa.state.gov/participants/how-to-apply/eligibility-and-fees/ (last visited October 28, 2019). A copy of this is also provided as Exhibit A.
- "Sponsors are also required to monitor the progress and welfare of the participants for the duration of their programs." *Id.*
- "Sponsors are to ensure that the participants' activities are consistent with the program category identified on the participants' Form DS-2019. *Id.*
- "Unless you are in a federally funded exchange program, sponsor organizations charge participants program fees. Fees vary from sponsor to sponsor based on the exchange category, the sponsor's program, program duration, etc. Be sure to check with your sponsor to get a breakdown of all costs and fees." *Id.*
- When recruiting participants, sponsors are also required to inform participants that their wages or stipend may not cover all of their expenses. *See* 22 C.F.R. § 62.9(d)(3) ("Program recruitment information and materials also must make clear to prospective exchange visitors in the exchange categories with a work component that their stipend or wages might not cover all of their expenses and that they should bring additional personal funds.")
- Although sponsors may use third parties, the sponsors remain ultimately responsible for compliance with the J-1 program. *See* 22 C.F.R. § 62.22(g)(1).[5]

In light of these indisputable facts, of which the Court may take judicial notice, Plaintiffs' allegations that Defendants required certain fees from Plaintiffs are misleading and fail to meet the required pleading standard. In sum, Plaintiffs' FLSA claim fails because Plaintiffs only

---

[5] 22 C.F.R. § 62.22(g) provides: "Sponsors may engage third parties (including, but not limited to host organizations, partners, local businesses, governmental entities, academic institutions, and other foreign or domestic agents) to assist them in the conduct of their designated training and internship programs. Such third parties must have an executed written agreement with the sponsor to act on behalf of the sponsor in the conduct of the sponsor's program. This agreement must outline the obligations and full relationship between the sponsor and third party on all matters involving the administration of their exchange visitor program. A sponsor's use of a third party does not relieve the sponsor of its obligations to comply with and to ensure third party compliance with Exchange Visitor Program regulations. Any failure by any third party to comply with the regulations set forth in this Part or with any additional terms and conditions governing Exchange Visitor Program administration that the Department may from time to time impose will be imputed to the sponsors engaging such third party." 22 C.F.R. § 62.22(g) (emphasis added).

conclusorily allege that their alleged visa, recruiting, and travel fees were "principally for the benefit of Defendants" based on speculative and irrelevant allegations of the status of such expenses had Plaintiffs been H-2B visa holders rather than J-1 interns, which they were not. As a result, Plaintiffs' FLSA claim should be dismissed.

## II. PLAINTIFFS' SECOND CLAIM ALLEGING A CIVIL RICO VIOLATION SHOULD BE DISMISSED BECAUSE IT RELIES ON DEFECTIVE FLSA ALLEGATIONS AND IS PREEMPTED BY PLAINTIFFS' FLSA CLAIM.

### A. Plaintiffs' Civil RICO Claim Improperly Regurgitates and Relies on the Same Inadequate Allegations as Their FLSA Claim

Though styled as a Civil RICO claim based on alleged violations of fraud in foreign labor contracting and mail and wire fraud (FAC ¶¶ 9.3–9.4), Plaintiffs' Second Claim for Relief substantially regurgitates and depends on the allegations of the FLSA claim. Both claims are premised on allegations that Defendants should have paid for or reimbursed Plaintiffs for travel costs, recruiting fees, and visa fees, (*compare, e.g.*, FAC ¶¶ 8.9–8.10, *with id.* ¶¶ 5.181 through 5.191, 9.6.), as well as allegations that the J-1 visa holders did not receive a genuine internship and instead were simply low-wage workers, (*Compare* FAC ¶ 8.11 (incorporating prior paragraphs of FAC, expressly including ¶¶ 5.20–5.26, among other paragraphs), *with* ¶ 9.1 (also incorporating ¶¶ 5.20–5.26, among other paragraphs). In fact, in support of their RICO claim, Plaintiffs expressly allege that "the Enterprise was formed for the purpose of inducing the State Department to issue visas to the J-1 visa interns and then benefiting from that conduct during the course of the employment of Plaintiffs and those similarly situated by, among other things, employing Plaintiffs as low-wage workers without having to pay the Travel Costs, Recruiting Fees, and higher Visa Fees associated with H-2B workers." (FAC ¶ 5.149 (emphasis added).)

11

The RICO claim's reliance on the FLSA allegations is especially apparent in Plaintiffs' discussion in paragraphs 5.181 through 5.191 of the FAC of how Defendants' alleged "fraud caused damage to the money and property of Plaintiffs and those similarly situated," which Plaintiffs expressly incorporate in their RICO claim (*see* FAC ¶ 9.1). Notably, Plaintiffs' discussion of causation and damages is limited to issues about recruiting fees, visa fees, and travel costs, which form the basis of Plaintiffs' FLSA claim. (*See, e.g.*, FAC ¶¶ 8.9–8.10.) Nowhere do Plaintiffs provide any allegations of any other damages allegedly suffered by Plaintiffs (emphasis added):

> 5.182 The fraudulent representations caused Plaintiffs and those similarly situated to lose money and property <u>by causing them to pay Recruiting Fees, Visa Fees, and Travel Costs</u> they would not have had to pay if they were properly classified as H-2B workers.
>
> 5.183 Defendants' contracts with Plaintiffs and those similarly situated instructed the "trainees" to finalize their travel plans only after their visas were issued by the State Department.
>
> 5.184 Finalizing travel plans included Plaintiffs and those similarly situated paying <u>Travel Costs</u>.
>
> 5.185 Defendants never reimbursed Plaintiffs or proposed class members for their <u>Travel Costs</u>.
>
> 5.186 Plaintiffs and those similarly situated also paid <u>Recruiting Fees</u> to members of the Enterprise to become interns at the Grand Hotel.
>
> 5.187 Defendants never reimbursed Plaintiffs or proposed class members for their <u>Recruiting Fees</u>.
>
> 5.188 Plaintiffs and those similarly situated also paid <u>Visa Fees</u> to the United States Government for their J-1 visas, which were required to become interns at the Grand Hotel.
>
> 5.189 Defendants never reimbursed Plaintiffs or proposed class members for their <u>Visa Fees</u>.

> 5.190 The only persons harmed by the racketeering activities of the Enterprise were Plaintiffs and those similarly situated, who paid these fees and costs in the expectation of receiving genuine internships, as required by the J-1 visa program.
>
> 5.191 It was also foreseeable that Plaintiffs and those similarly situated would be harmed by Defendants' racketeering activities, as there was no one else who could be expected to pay the Recruiting Fees, Visa Fees, and Travel Costs required to become an intern at the Grand Hotel through the J-1 visa program.

Because Plaintiffs' Civil RICO claim is predicated on the same allegations as Plaintiffs' FLSA claim, the RICO claim fails for the same reasons as Plaintiff's FLSA claim, as discussed above.

### B. Even If Plaintiffs' FLSA Allegations Could Be Sustained, the Civil RICO Claim Should Be Dismissed Because It Is Preempted by the FLSA Claim.

It is a "well-established principle that, in most contexts, a precisely drawn, detailed statute preempts more general remedies." *Hinck v. United States*, 550 U.S. 501, 506 (2007) (internal quotations and citations omitted). Accordingly, "[a]ll duplicative RICO claims are preempted by the FLSA's comprehensive administrative scheme." *Valverde v. Xclusive Staffing, Inc.*, No. 16-CV-00671-RM-MJW, 2017 WL 1386351, at *5 (D. Colo. Feb. 23, 2017), report and recommendation adopted in part, rejected in part, No. 16-CV-00671-RM-MJW, 2017 WL 3866769 (D. Colo. Sept. 5, 2017) (internal citations omitted). This is consistent with numerous courts that have held that "by enacting the FLSA, Congress has set forth comprehensive and exclusive remedies for violations of the statute's provisions." *Id.* at *4 (collecting numerous cases); *see also Barnett v. Pikes Peak Cmty. Coll. Police Dep't*, No. 14-CV-02820-LTB, 2015 WL 4245822, at *4 (D. Colo. July 14, 2015) (dismissing Section 1983 claim on grounds that it was preempted by FLSA, where 1983 claim was premised on defendants' alleged failure to pay plaintiffs past compensation for services they performed).

In determining whether a RICO claim is preempted by a FLSA claim, "the key question for the court to resolve is whether, and to what extent, plaintiff's civil RICO claims are duplicative of their FLSA claims." *Valverde* at *5 (citing *DeSilva*, 770 F. Supp. 2d at 115). For example, in *Valverde*, the Court dismissed plaintiffs' RICO claim after finding that, "distilled to its essence," the claim "stem[med] from their FLSA claim for unpaid overtime." *Valverde* at *6. *See also, e.g., DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 511–12 (E.D.N.Y. 2011) (dismissing RICO claim that was premised on allegations that defendants committed mail fraud by mailing misleading payroll checks); *Choimbol v. Fairfield Resorts, Inc.*, No. 2:05CV463, 2006 WL 2631791, at **4, 7 (E.D. Va. Sept. 11, 2006) (dismissing RICO claim as preempted by FLSA claim that was based on alleged minimum wage/overtime violations).

As discussed above, Plaintiffs' RICO claim is wholly dependent on the merits of the FLSA claim. In other words, at "its essence," the RICO claim "stems from the[] FLSA claim," *see Valverde* at *6, by seeking relief based on Plaintiffs' claims for travel costs, recruiting fees, and visa fees, (*compare, e.g.,* FAC ¶¶ 8.9–8.10, *with id.* ¶¶ 5.181 through 5.191, 9.6.), as well as allegations that the J-1 visa holders did not receive a genuine internship and instead were simply low-wage workers, (*Compare* FAC ¶ 8.11 (incorporating prior paragraphs of FAC, expressly including ¶¶ 5.20–5.26, among other paragraphs), *with* ¶ 9.1 (also incorporating ¶¶ 5.20–5.26, among other paragraphs). Indeed, the alleged fraudulent scheme of "making false representations . . . regarding the terms and conditions of employment at the Grand America Hotel," and "offering internships that were actually low wage jobs to defraud Plaintiffs and those similarly situated out of money," (FAC ¶¶ 5.152 & 5.173) simply would not exist "but for the

14

[alleged] proscriptions of FLSA." *See Choimbol v. Fairfield Resorts, Inc.*, No. 2:05CV463, 2006 WL 2631791, at *7 (E.D. Va. Sept. 11, 2006). Thus, even if the Court were to sustain Plaintiffs' FLSA claim, the RICO claim should be dismissed as a matter of law because it is preempted by the FLSA.

### III. CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion and dismiss Plaintiffs' First and Second Claims for Relief.

DATED this the 1st day of November, 2019.

KUNZLER BEAN & ADAMSON, PC

*/s/ Matthew R. Lewis*
Matthew R. Lewis
R. Jeremy Adamson
Megan J. Nelson

*Attorneys for Defendant Grand America Hotels & Resorts, Inc. and Sinclair Services Company*

## **CERTIFICATE OF SERVICE**

On this 1st day of November, 2019, the undersigned hereby certifies that a true and correct copy of the foregoing **DEFENDANTS' MOTION TO DISMISS CLAIMS I AND II OF PLAINTIFFS' FIRST AMENDED COMPLAINT** was filed with the Clerk of the Court using the CM/ECF system, which sent notifications of such filing to the following:

> P. Alex McBean
> Alex McBean Law Office
> P.O. Box 1726
> Bountiful, Utah 84011
> Mcbean04@gmail.com
> -and-
> Alexander N. Hood
> Towards Justice
> 1410 High Street, Ste 300
> Denver, CO 80218
> alex@towardsjustice.org
> -and-
> Erika L. Nusser
> Beth E. Terrell
> Terrell Marshall Law Group
> 936 N 34th Street, Ste 300
> Seattle, WA 98103
> enusser@terrellmarshall.com
>
> *Attorneys for Plaintiffs*

*/s/ Allie Orr*
Allie Orr

# Exhibit A



**EXCHANGE VISITOR PROGRAM**

# Eligibility and Fees

Sponsors screen and select their program participants according to the eligibility criteria for each program category. Some categories require that a personal interview be part of the screening and selection process. In addition to program-specific criteria, all participants must satisfy English language proficiency and insurance requirements. Sponsors are to provide participants with pre-arrival information prior to their departure from their home countries and an orientation upon their arrival in the United States. Sponsors are also required to monitor the progress and welfare of the participants for the duration of their programs.

## English Language Proficiency

Participants must possess sufficient proficiency in the English language to participate in their programs. **[22 CFR 62.10(a)(2)]**

## Insurance

Participants and any J-2 dependents (spouses and minor unmarried children under the age 21) accompanying them are required to carry medical insurance at the minimum benefit levels (/sponsors/how-to-administer-a-program/) stated in the program regulations. Program sponsors are required to ensure that all participants have the appropriate medical insurance. Sponsors will verify that the participant's medical insurance meets the regulatory requirements, and will facilitate the purchase of coverage for participants who do not have their own insurance, or whose coverage does not meet the requirements. Participants interested in obtaining appropriate medical insurance should contact the responsible officer of their sponsor organization sponsoring their program. Willful failure on the part of the participant and/or any J-2 dependents to maintain active insurance coverage is grounds for termination from the program. Please refer to the regulations for details. **[22 CFR 62.14]**

## Pre-Arrival Information

Sponsors are required to provide their participants with information about the program (/sponsors/how-to-administer-a-program/) and related matters **before** they leave their home countries for the United States. Sponsors must also provide their participants with specific program information and any contractual obligations relevant to their program category. For details, please refer to the regulations. **[22 CFR 62.10 (b)(1-8) and specific regulations for categories of interest]**

## Orientation

Sponsors must offer appropriate orientation (/sponsors/how-to-administer-a-program/) for all participants, and are encouraged to offer orientation to the participant's family (J-2 spouses and dependents), especially those expected to remain in the United States for at least one year. For details, please refer to the regulations. **[22 CFR 62.10 (c)(1-7) and specific regulations for categories of interest]**. Orientation materials should include information about the region, state and locale.

## Monitoring

Sponsors are required to monitor the progress and welfare of their participants. Sponsors are to ensure that the participants' activities are consistent with the program category identified on the participants' Form DS-2019. Sponsors are also to require their participants to provide current contact (address and telephone number) information and to maintain this information in their files.

All program categories require that sponsors provide emergency, 24-hour contact information to their participants. Participants should not hesitate to contact the responsible officer if they need assistance. For additional information, please refer to the regulations. **[22 CFR 62.10(e) and specific regulations for categories of interest]**

# Fees

### Program Fees

Unless you are in a federally funded exchange program, sponsor organizations charge participants program fees. Fees vary from sponsor to sponsor based on the exchange category, the sponsor's program, program duration, etc. Be sure to check with your sponsor to get a breakdown of all costs and fees.

## SEVIS Fee

When you are accepted into an exchange visitor program, the program sponsor will issue you a form DS-2019. The program sponsor will tell you if you must pay a SEVIS I-901 fee to the Department of Homeland Security (DHS) or if this fee is already part of your program fees. If your sponsor pays the SEVIS fee on your behalf, the Sponsor will provide you with a receipt confirming payment. Visit SEVIS-901 fee (http://www.ice.gov/sevis/i901/) on the DHS website for more information.

## Visa Fees

**Nonimmigrant visa application processing fee** - Each exchange visitor who applies for a visa at a U.S. embassy or consulate must pay the nonimmigrant visa application processing fee. Read more about current fees (http://travel.state.gov/content/passports/en/passports/information/fees.html) for State Department services. Visit the Bureau of Consular Affairs website (http://travel.state.gov/content/passports/en/passports/information/card.html) to learn more on how to apply for a J visa. Visa applicants need to demonstrate their eligibility for a visa during an interview by a consular officer at the U.S. embassy or consulate, generally in their country of residence.

You will need to provide a receipt showing the visa application processing fee has been paid when you come for your visa interview. NOTE: U.S. Government sponsored exchange visitor J visa applicants and their dependents are not required to pay visa application processing fees if participating in a Department of State, a U.S. Agency for International Development (USAID), or a U.S. Government funded educational and cultural exchange program that has a program serial number beginning with G-1, G-2, G-3, or G-7 printed on form DS-2019, Certificate of Eligibility for Exchange Visitor Status.

**Visa issuance fee** – Please review the visa reciprocity tables (http://travel.state.gov/content/visas/en/fees/reciprocity-by-country.html) to determine if an additional visa reciprocity fee must be paid upon visa issuance and the amount of the fee. NOTE: U.S. Government sponsored exchange visitor (J visa) applicants and their dependents are not subject to visa application or issuance fees.