P. Alex McBean, #10390
Email: mcbean04@gmail.com
ALEX McBEAN LAW OFFICE, PLLC
P.O. Box 1726
Bountiful, Utah 84011
Telephone (385) 319-1137

[Additional counsel appear on signature page]

*Attorneys for plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| JANN DESCANZO, VERONICA BONDOC, GLEN SEGUNDINO, and MARIANNE PONIO, and those similarly situated,<br><br>               Plaintiffs,<br><br>   v.<br><br>GRAND AMERICA HOTELS & RESORTS, INC. and SINCLAIR SERVICES COMPANY<br><br>               Defendants. | Case No. 2:19-CV-00443-DB<br><br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**<br><br><br>**Honorable Dee Benson**<br><br>JURY TRIAL DEMANDED |

# TABLE OF CONENTS

**Page**

I.    INTRODUCTION ............................................................. 1

III.   STATEMENT OF FACTS ............................................... 3

    A.    J-1 internship visas must not be used as substitutes for
ordinary employment ............................................... 3

    B.    H-2B visas for ordinary employment require employers to
pay recruiting and visa fees and workers' travel costs .......... 4

    C.    Defendants have a history of using undocumented
low-wage workers .................................................. 5

    D.    Defendants use J-1 visa interns as substitutes for
ordinary employees ................................................ 6

IV.   ARGUMENT AND AUTHORITY ..................................... 8

    A.    Plaintiffs' complaint contains sufficient facts to state
plausible claims for relief under the FLSA and RICO ........... 8

    B.    Plaintiffs allege they were required to pay recruiting, visa,
and travel costs that were primarily for defendants' benefit
and convenience, and that those costs lowered plaintiffs'
effective wage rates below minimum wage ......................... 9

        1.    Plaintiffs allege facts sufficient to establish that
recruiting, visa, and travel costs were primarily for
the benefit and convenience of defendants ................. 9

        2.    Plaintiffs allege defendants used the J-1 visa program
Unlawfully, establishing a plausible claim under
the FLSA ................................................... 15

    C.    Plaintiffs' RICO claim exists independent of the FLSA claim
and is therefore not preempted by the FLSA ...................... 18

IV.   CONCLUSION ................................................................................. 21

# TABLE OF AUTHORITIES

**Page**

*Arriaga v. Florida Pacific Farms, L.L.C.*,
    305 F.3d 1228 (11th Cir. 2002)....................................................... 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................... 8

*Auer v. Robbins*,
    519 U.S. 452 (1997) ....................................................................... 15

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................... 8

*Beltran v. InterExchange, Inc.*,
    176 F. Supp. 3d 1066, 1080 (D. Colo. 2016) ................................. 16

*Brooklyn Savings Bank v. O'Neil*,
    324 U.S. 697 (1945) ....................................................................... 10

*Darrow v. WKRP Mgmt., LLC*,
    No. 09-CV-01613-CMZ-BNB,
    2010 WL 1416799 (D. Colo. Apr. 6, 2010).................................... 14

*DeSilva, DeSilva v. N. Shore-Long Island Jewish Health Sys.*, Inc.,
    770 F. Supp. 2d 497 (E.D.N.Y. 2011)........................................... 20

*English v. General Elec. Co.*,
    496 U.S. 72 (1990) ......................................................................... 18

*Gaxiola v. Williams Seafood of Arapahoe, Inc.*,
    776 F. Supp. 2d 117 (E.D.N.C. 2011)........................................... 15

*Gilles v. Ford Motor Co.*,
    24 F. Supp. 3d 1039 (D. Colo. 2014)............................................ 18

*Hagadorn v. M.F. Smith & Assocs., Inc.*,
    172 F.3d 878 (table), 1999 WL 68403 (10th Cir. 1999) ................ 15

iii

*Jacobsen v. Desert Book Co.*,
    287 F.3d 936 (10th Cir. 2022)......................................................... 8

*Jatupornchaisri v. Wyndham Vacation Ownership, Inc.*,
    No. 6:12-CV-59-ORL-31GJK,
    2012 WL 1600435 (M.D. Fla. May 7, 2012)........................... 11, 16

*Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.*,
    No. CIV.A. 09-379,
    2009 WL 2175585 (W.D. Pa. July 20, 2009) ............................... 18

*Oxendine v. Kaplan*,
    241 F.3d 1272, 1275 (10th Cir. 2001)............................................ 8

*Stidham v. Peace Officer Stds. Training*,
    265 F.3d 1144 (10th Cir. 2001)....................................................... 8

*Sutton v. Utah Sch. for the Deaf & Blind*,
    173 F.3d 1226 (10th Cir. 1999)....................................................... 8

*Wass v. NPC Int's, Inc.*,
    688 F. Supp. 2d 1282 (D. Kan. 2010).......................................... 14

*United States v. Elledge*,
    614 F.2d 247 (10th Cir. 1980)....................................................... 15

*Valverde v. Xclusive Staffing, Inc.*
    No. 16-CV-00671-RM-MJW,
    2017 WL 1386351 (D. Colo. Feb. 23, 2017)................................ 19

## RULES AND STATUTES

Rule 9(b) ............................................................................................... 9

Rule 12(b)(6)......................................................................................... 8

22 U.S.C. § 2451 *et seq.*...................................................................... 3

29 U.S.C. § 202(a) ................................................................................ 9

29 U.S.C. § 203(e) ................................................................... 15

8 C.F.R. § 214.2(h)(1)(ii)(D) ...................................................... 4

22 C.F.R. § 62.22(b) .................................................................. 4

22 C.F.R. § 62.22(f)(2) .............................................................. 17

22 C.F.R. § 62.22(i)(2) ............................................................... 4

29 C.F.R. § 503.16(j)................................................................. 4

29 C.F.R. § 503.16(o) ................................................................ 5

29 C.F.R. § 503.16(p) ................................................................ 5

29 C.F.R. § 531.32(a) .............................................................. 12

29 C.F.R. § 531.32(c)............................................................... 12

Pub. L. No. 87-256, 75 Stat. 527.............................................. 3

## I.  INTRODUCTION

This is a proposed class and collective action on behalf of foreign workers who came to the United States to continue their education under a program known as the Exchange Visitor Program or J-1 visa internship program. Plaintiffs Jann Descanzo, Veronica Bondoc, Glen Segundino, and Marianne Ponio are all citizens of the Philippines who studied tourism there and who came to the United States to continue their education by participating in a J-1 visa internship at Salt Lake City's largest hotel—the Grand America.

Plaintiffs allege that defendants Grand America Hotels & Resorts, Inc. and Sinclair Services Company never intended to and did not provide plaintiffs with the internships defendants promised and were required to provide pursuant to the J-1 visa program. Instead, plaintiffs allege defendants used the J-1 visa program unlawfully to fulfill the Grand America Hotel's ordinary employment needs.

Defendants' motion to dismiss challenges plaintiffs' claims under the Fair Labor Standards Act (FLSA) and the Racketeer Influenced and Corrupt Organization Act (RICO). Defendants assert plaintiffs' FLSA claim must be dismissed because plaintiffs fail to allege that any regulation would require defendants to pay for a foreign workers' recruiting, visa, and travel

costs. Defendants further allege that plaintiffs' RICO claim is preempted by the FLSA. Defendants are wrong on both accounts.

First, plaintiffs' FLSA claim is not dependent on a regulation requiring that defendants pay the recruiting, visa, and travel costs of their foreign workers. Plaintiffs' claim is a straightforward minimum wage claim asserting that shifting costs that primarily benefit defendants onto plaintiffs unlawfully brought plaintiffs' effective wage below the minimum wage. Even if plaintiffs were required to support this claim with another, separate regulatory violation, plaintiffs have done so. The J-1 internship visa program through which defendants hired plaintiffs required defendants to certify under penalty of perjury that defendants would adhere to all regulatory provisions that govern the program. The regulatory provisions provide, in turn, that the program "must not be used as a substitute for ordinary employment." Plaintiffs allege defendants violated those regulatory requirements.

When foreign workers are employed for ordinary employment purposes, employers are required to use a different visa program—the H-2B visa. The regulatory requirements of that program prohibit employers from charging recruiting and visa fees, directly or indirectly, and further require employers to reimburse their foreign workers' travel costs to and from their home countries.

2

Plaintiffs allege that by unlawfully using the J-1 visa program for ordinary employment purposes, defendants shifted fees and costs to plaintiffs that defendants were required to pay. As a result, plaintiffs' effective wage rates fell below the minimum wage in violation of the law.

Second, plaintiffs' RICO claim is not dependent on plaintiffs' FLSA claim. The alleged harm caused by plaintiffs' FLSA claim is a minimum wage violation. Plaintiffs' RICO claim, however, alleges defendants made false promises to induce the United States to issue visas to plaintiffs causing plaintiffs to pay recruiting, visa, and travel costs. The alleged harm caused by defendants' RICO violation exists even if there is no FLSA minimum wage violation. The RICO claim is therefore not preempted.

For these reasons and those that follow, plaintiffs respectfully request the Court deny defendants' motion.

## II.  STATEMENT OF FACTS

### A.    J-1 internship visas must not be used as substitutes for ordinary employment.

Created by the Mutual Educational and Cultural Exchange Act of 1961, the J-1 visa internship program is intended to "increase mutual understanding between the people of the United States and the people of other countries by means of education and cultural exchange." Pub. L. No. 87-256, 75 Stat. 527, *codified at* 22 U.S.C. § 2451 *et seq.*

The J-1 visa internship program seeks to do so by "enhanc[ing] the skills and expertise of exchange visitors in their academic or occupational fields through participation in structured and guided work-based training and internship programs and to improve participants' knowledge of American techniques, methodologies, and technology." 22 C.R.F. § 62.22(b). J-1 visa interns "must not be used as substitutes for ordinary employment or work purposes; nor may they be used under any circumstances to displace American workers." *Id.*

To obtain visas for J-1 interns, employers are required to submit internship training plans to the United States Department of State detailing the training and internships they intend to provide to intern-participants. Employers are required to certify the truth of the statements made in their internship plans under penalty of perjury. *Id.*

The regulatory requirements for J-1 visa internships are meant to "distinguish between bona fide training for trainees or work-based learning for interns, which are permitted, and unskilled or casual labor positions which are not…." 22 C.F.R. § 62.22(i)(2).

**B.   H-2B visas for ordinary employment require employers to pay recruiting and visa fees and workers' travel costs.**

The H-2B visa, on the other hand, is the visa applicable to unskilled or casual labor positions in nonagricultural jobs. *See* 8 C.F.R. §

4

214.2(h)(1)(ii)(D) ("An H-2B classification applies to an alien who is coming

temporarily to the United States to perform nonagricultural work of a

temporary or seasonal nature…."). The regulatory requirements for that

visa require H-2B employers to reimburse workers for their travel costs to

and from their home countries. *See* 29 C.F.R. §§ 503.16(j). The

requirements further prohibit H-2B employers from charging recruiting or

visa fees directly or through a third party, such as a recruiter. 29 C.F.R. §§

503.16(j), (o), (p). Indeed, H-2B employers "must contractually prohibit in

writing any agent or recruiter…whom the employer engages, either directly

or indirectly, in recruitment of H-2B workers to seek or receive payments or

other compensation from prospective workers." 29 C.F.R. §§ 503.16(p).

## C. Defendants have a history of using undocumented low-wage workers.

Defendants own and operate the Grand America Hotel, which is the

largest hotel in Salt Lake City, Utah. *See* Dkt. No. 33, First Amended

Complaint (hereinafter, "FAC") ¶ 5.1. Historically, defendants have

employed hundreds of workers from outside the United States to perform

low-wage work necessary to the hotel's operations. *Id.* ¶¶ 5.10-5.19. In

2011, the United States Department of Homeland Security found that

Grand America was employing 133 undocumented workers to operate its

hotel. *Id.* ¶ 5.18. In 2014, the Grand America came under investigation

again and ultimately entered into a non-prosecution agreement with the United States Department of Justice whereby defendants agreed to pay a $1.95 million penalty to end the investigation relating to the hiring or employment of unauthorized aliens. *Id.*

Since that time, the Grand America Hotel has continued to employ workers from outside the United States to perform low-wage work. Now, however, defendants invite workers to their hotel to participate in purportedly educational internships through the J-1 program. FAC ¶ 5.19.

## D. Defendants use J-1 visa interns as substitutes for ordinary employees.

As part of their continued education, plaintiffs looked for internships in the United States to bolster their careers in hospitality and tourism. FAC ¶¶ 5.34-5.35, 5.61-5.62, 5.86-5.87, 5.115-5.116. While still in the Philippines, plaintiffs each obtained an offer for an internship at the Grand America Hotel. *Id.* ¶¶ 5.36, 5.63, 5.88, 5.117. Before beginning their internships, defendants provided each plaintiff with an internship plan, including phases, specific goals, specific knowledge, skills, and techniques to be learned during each phase, and the specific cultural experiences that would be provided. *See* FAC, Exs. 2-5.

Through their internship plans, defendants certified to the State Department that defendants would follow the training plan, "adher[e] to all

applicable regulatory provisions that govern [the] program (*see* 22 CFR Part 62)," and that the internship plan "meets all the requirements of the Fair Labor Standards Act, as amended (29 U.S.C. 201 *et seq.*)," among other things. *See* FAC ¶ 5.26; *see also* FAC, Exs. 2-5. Defendants made these certifications under penalty of perjury. *Id.*

Defendants' internship plans were then presented to the State Department when plaintiffs applied for their internship visas. FAC ¶¶ 5.21-5.22, 5.32-5.41, 5.61-5.68, 5.68-5.93, 5.115-5.122. And the State Department relied on defendants' certification when it issued J-1 visas to plaintiffs and proposed class members. *Id.* ¶ 5.26.

Plaintiffs each paid recruiting, visa, and travel costs of more than $4,000 to obtain and travel to their internships at defendants' Grand America Hotel. FAC ¶¶ 5.42, 5.69, 5.94, 5.123. But plaintiffs allege that once they arrived in the United States, defendants failed to provide the internships they had promised. *Id.* ¶¶ 5.43-5.60, 5.70-5.85, 5.95-5.114, 5.124-5.138. Instead, defendants employed plaintiffs to satisfy the hotel's ordinary employment needs, without providing the promised training and cultural experiences required by the J-1 internship visa program. *Id.*

## III.  ARGUMENT AND AUTHORITY

### A.  Plaintiffs' complaint contains sufficient facts to state plausible claims for relief under the FLSA and RICO.

Motions to dismiss are disfavored and should not be granted where the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, constitutes facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Under Rule 12(b)(6), the court must accept all well-pleaded allegations in the complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Stds. Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). The Court must limit its consideration to the four corners of the complaint, and any documents attached thereto, and any external documents that are referenced in the complaint whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Desert Book Co.*, 287 F.3d 936, 941 (10th Cir. 2022).

Here, plaintiffs allege defendants unlawfully used the J-1 visa program to fulfill their "ordinary employment" needs. FAC ¶¶ 5.20-5.31, 5.43-5.60, 5.70-5.85, 5.95-5.114, 5.124-5.138. Plaintiffs allege defendants did so knowingly and with intent to induce the Department of State "to issue J-1 visas instead of more costly H-2B visas." *Id.* ¶ 5.154. Defendants thereby avoided paying the recruiting, visa, and travel costs that H-2B employers are required to pay for workers who fill casual labor positions. *Id.* ¶¶ 5.28-5.31. Accepting these factual allegations as true, plaintiffs' complaint sufficiently states claims for wage violations and fraud.[1] Defendants' motion to dismiss should be denied.

**B.   Plaintiffs allege they were required to pay recruiting, visa, and travel costs that were primarily for defendants' benefit and convenience, and that those costs lowered plaintiffs' effective wage rates below minimum wage.**

    1.   Plaintiffs allege facts sufficient to establish that recruiting, visa, and travel costs were primarily for the benefit and convenience of defendants.

The FLSA is a broad, remedial statute designed to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers."

---

[1] Defendants challenge plaintiffs' fraud-based RICO claim on the grounds that the FLSA preempts the RICO claim. Because defendants do not challenge the sufficiency of the factual allegations of plaintiffs' fraud claim, defendants' assertion that Rule 9(b) applies to consideration of its motion is without merit.

29 U.S.C. § 202(a). To that end, the primary purpose of the FLSA is to "aid the unprotected, unorganized and lowest paid of the nation's working population." *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, n.18 (1945).

The protections of the minimum wage provisions of the FLSA require employers to provide workers' weekly wages "in cash or in facilities, free and clear of improper deductions, at a rate no lower than the minimum wage rate." *See Arriaga v. Florida Pacific Farms, L.L.C.*, 305 F.3d 1228, 1235 (11th Cir. 2002) (internal marks and citations omitted). That is, an employer may not deduct from employee wages the cost of "facilities" which primarily benefit the employer if such deductions drive wages below the minimum wage. *Arriaga*, 305 F.3d at 1236. "This rule cannot be avoided by simply requiring employees to make such purchases on their own, either in advance of or during the employment." *Id.*; *see also* 29 C.F.R. § 531.36(b).

The FLSA does not define which "facilities" primarily benefit the employee and which primarily benefit the employer. And while the Department of Labor (DOL) regulations provide guidance and examples, courts recognize that some "categories are more nuanced" and "the costs are primarily for the benefit of the employer or the employee depending on the specific facts." *Id.* at 1243.

Here, plaintiffs have alleged facts establishing that the recruiting, visa, and travel costs they paid to obtain their internships at the Grand America were primarily for the benefit of defendants. *See, e.g.*, FAC ¶¶ 5.20-5.31, and 5.34-5.138. For example, plaintiffs allege they incurred travel costs from the Philippines solely to travel to their internships. *Id.* ¶¶ 5.42, 5.69, 5.94, 5.123. Plaintiffs also allege their visas were obtained for purposes of their internships and their visas restricted them to the internships described in defendants' internship plans. *See id.*, Exs. 2-5. Plaintiffs further allege they paid recruiting fees to obtain the internships and that defendants were not only aware of those fees, but that defendants were also participants in the recruitment process. FAC ¶¶ 5.36-5.37, 5.41-5.42, 5.63-5.64, 5.68-5.69, 5.88-5.89, 5.93-5.94, 5.117-5.118, 5.122-5.123. Courts have found near-identical allegations sufficient at the pleading stage and even to defeat summary judgment. *See Jatupornchaisri v. Wyndham Vacation Ownership, Inc.*, No. 6:12-CV-59-ORL-31GJK, 2012 WL 1600435 (M.D. Fla. May 7, 2012) (denying motion to dismiss plaintiff J-1 visa holders' claims that defendant-hotel violated the FLSA by failing to reimburse recruiting, visa, and travel expenses); *Arriaga*, 305 F.3d at 1231 (reversing district court's entry of summary judgment on claims for transportation and visa expenses incurred by H-2A visa holders).

In *Arriaga*, migrant farmworkers from Mexico sued their employers, the "growers," alleging failure by the growers to comply with the minimum wage provisions of the FLSA. 305 F.3d at 1231. The farmworkers alleged that the growers' failure to reimburse travel, visa, and recruiting costs at the end of the first workweek pushed their first week's wages below the minimum wage. *Id.* at 1232.

To determine whether travel costs were "primarily for the benefit or convenience of the employer," the Eleventh Circuit looked first to the DOL regulations for guidance. 305 F.3d at 1237. The regulations twice mention transportation costs and provide that such costs are for the benefit of the employer where the transportation is "an incident of and necessary to the employment." *Id.* (quoting 29 C.F.R. § 531.32(a) & (c)). Turning next to the facts of the case, the court noted that in choosing to participate in a visa program to employ nonimmigrant farmworkers, the growers understood the workers were not coming from commutable distances. *Id.* at 1242. As such, the farmworkers' employment "necessitates that one-time transportation costs be paid by someone." *Id.* The court therefore concluded that the transportation costs were "an incident of and necessary to the employment" of the farmworkers and should have been reimbursed. *Id.*

The *Arriaga* court also concluded that the employer should have reimbursed the farmworkers for their visa fees. *Id.* at 1244. The court reasoned that "[u]nlike food, boarding, or commuter expenses, these fees are not costs that would arise as an ordinary living expense." *Id.* Rather, the employer created the need for visa costs by participating in the visa program. *Id.* The visa costs were therefore necessary to the employment and primarily for the benefit of the employer. *Id.*

With respect to recruiting fees, the *Arriaga* court did not determine whether such fees were primarily for the benefit of the employer. Instead, the court found the growers could not be held liable for recruiting fees the farmworkers paid to sponsors because the farmworkers failed to allege that the growers had any awareness or apparent authority in relation to those fees. *Id.* at 1232, 1244-1246. Plaintiffs' complaint in this case does not suffer from the same flaw because plaintiffs allege defendants' involvement and enterprise with the sponsors in the recruiting process. *See, e.g.*, FAC ¶¶ 5.36-5.37, 5.41-5.42, 5.63-5.64, 5.68-5.69, 5.88-5.89, 5.93-5.94, 5.117-5.118, 5.122-5.123; *see also* FAC 5.147, 5.149.

As in *Arriaga*, the plaintiffs here incurred recruiting, visa, and travel expenses solely for the purposes of obtaining and travelling to their promised internships. *Id.* ¶¶ 5.42, 5.69, 5.94, 5.123. Plaintiffs allege that

defendants understood plaintiffs were coming from the Philippines and that defendants participated in recruiting plaintiffs while they were still in the Philippines. *Id.* ¶¶ 5.32-5.33, 5.36-5.37, 5.63-5.64, 5.88-5.89, 5.117-5.118. Thus, the allegations in plaintiffs' complaint establish that defendants created the need for the costs plaintiffs incurred and that such costs were necessary to the employment and primarily for the benefit of defendants.

Despite defendants' assertion to the contrary, no "higher degree of specificity of pleading" is required for plaintiffs' FLSA claim. *See* Dkt. No. 38 at 6-7. The cases cited by defendants do not support this argument. *Id.* In each case the "conclusory" allegations at issue related to the plaintiffs' failure to allege "what they were paid on an hourly basis, what amounts they expended… what they were reimbursed… or any other facts that could allow [the] Court to infer that Plaintiffs have actually received less than minimum wage." *Darrow v. WKRP Mgmt., LLC*, No. 09-CV-01613-CMZ-BNB, 2010 WL 1416799, at *2 (D. Colo. Apr. 6, 2010); *see also Wass v. NPC Int's, Inc.*, 688 F. Supp. 2d 1282, 1288 (D. Kan. 2010) (same). Defendants do not argue that plaintiffs failed to make such allegations, nor could they. *See, e.g.,* FAC ¶¶ 5.42, 5.44-5.46, 5.69, 5.71-5.74, 5.94, 5.96-5.98, 5.123, 5.125-5.127.

Defendants assert instead that plaintiffs' complaint is deficient because plaintiffs do not allege any regulation that would require defendants to reimburse plaintiffs for their recruiting, visa, and travel costs. Dkt. No. 38 at 7-9. This deficiency, defendants argue, is the missing factual allegation that would establish defendants "should have" reimbursed plaintiffs' costs. *Id.* But plaintiffs' FLSA claim is not dependent on the existence of such a regulation and defendants do not cite any case in support of this proposition.

Even if there was such a requirement (there is not), defendants' argument ignores plaintiffs' allegations that defendants used the J-1 visa program in violation of the regulations that govern the program. *See* FAC ¶¶ 5.20-5.31. Plaintiffs' complaint states a plausible claim under the FLSA.

2.   Plaintiffs allege defendants used the J-1 visa program unlawfully, establishing a plausible claim under the FLSA.

Defendants' assertion that they cannot be held liable for their FLSA violations because of the visa requirements imposed on sponsors is without merit. *See* Dkt. No. 38 at 9-10. Defendants appear to claim that because sponsor organizations play a role in recruiting program participants, ensuring program compliance, and collecting fees, plaintiffs cannot plausibly allege that defendants benefitted from the fees plaintiffs paid. This argument ignores plaintiffs' specific allegations of the benefits defendants

received – namely, a supply of cheap foreign labor to staff the day to day operations of defendants' hotel. *See* FAC ¶¶ 5.20-5.31. Moreover, whether the organizations that sponsored plaintiffs also benefitted from the fees plaintiffs paid is irrelevant to the resolution of this motion.[2]

Defendants' argument is tantamount to asking the Court to imply a new FLSA exemption based on the State Department's guidance and regulations relating to the J-1 visa program. *See* Dkt. No. 38 at 9-10. But this would be contrary to the remedial purposes of the FLSA and the directive to construe the FLSA liberally "to apply to the furthest reaches consistent with Congressional direction." *United States v. Elledge*, 614 F.2d 247, 251 (10th Cir. 1980). Exemptions are disfavored, not given generous application, and are construed narrowly against employers asserting them. *Auer v. Robbins*, 519 U.S. 452, 462 (1997). An employer claiming an exemption faces a heightened burden of proof; he must show that the employee fits "plainly and unmistakably" within the terms of an exemption. *Hagadorn v. M.F. Smith & Assocs., Inc.*, 172 F.3d 878 (table), 1999 WL 68403 (10th Cir. 1999).

---

[2] The District of Colorado rejected a similar attempt to hide behind J-1 visa regulations to avoid FLSA liability, finding that employer's compliance or non-compliance with visa regulations had no bearing on the FLSA claim which was separate. *See Beltran v. InterExchange, Inc.*, 176 F. Supp. 3d 1066, 1080 (D. Colo. 2016).

Defendants have identified no exemption that would excuse them from paying plaintiffs the minimum wage. And only Congress has the authority to create exemptions to the FLSA; neither the State Department nor any other regulatory agency is empowered to carve out exemptions beyond those set out in the FLSA. And at least one court has already rejected the same argument defendants' make here.

In *Wyndham*, J-1 visa holders from Thailand and Vietnam brought minimum wage claims against a hotel alleging the same violations plaintiffs allege in this case. 2012 WL 1600435, at *1. The Wyndham plaintiffs alleged that the hotel "recruited Plaintiffs and other J-1 visa holders in Thailand and Vietnam to fill housekeeping positions" in direct violation of the J-1 visa regulations. *Id.* The plaintiffs alleged that Wyndham violated the FLSA "by failing to reimburse Plaintiffs for the expenses incurred in obtaining their J-1 visas [and] for travel expenses…." *Id.*

Wyndham argued that it could not be held liable for such violations because the visa regulation provided a remedy limited to "reprimands, suspensions, terminations, and the placing of various conditions on the *sponsoring* organization" and that "such remedies do not extend to the 'companies with whom the visitors are placed.'" *Id.* at *2. In rejecting this argument, the court noted "[t]here is no compelling reason…to hold that the

existence of this administrative remedy precludes Plaintiffs from seeking their statutory remedy for damages." *Id.* "The harm inflicted by violation of the FLSA cannot be remedied by administrative action against the sponsor organization." *Id.* Indeed, that is why plaintiffs chose to sue their employers and not their sponsors.

The J-1 visa program is intended to be an educational and cultural exchange between people of the United States and other countries that provides intern-participants with hands-on experience and training. Since the primary purpose is education and cultural exchange, host organizations like defendants must provide training, oversight, and similar learning activities, and must not use the J-1 visa program as a substitute for ordinary employment. 22 C.F.R. § 62.22(f)(2).

In direct violation of the regulations, defendants recruited plaintiffs and other J-1 visa holders in their home countries to fill casual labor positions at the Grand America Hotel. These allegations are not "speculative" nor "irrelevant." To the contrary, plaintiffs' allegations state a plausible claim for relief. Plaintiffs' FLSA claim should not be dismissed.

## C.   Plaintiffs' RICO claim exists independent of the FLSA claim and is therefore not preempted by the FLSA.

Defendants assert that plaintiffs' RICO claim should be dismissed on the grounds that it is preempted by the FLSA. *See* Dkt. No. 38 at 13-15.

18

But this is not preemption in the typical sense because these are two federal statutes, neither of which can preempt the other. Defendants' preemption argument is just shorthand for the principle that "a precisely drawn, detailed statute pre-empts more general remedies." *Hinck v. United States*, 550 U.S. 501, 506 (2007) (internal quotation marks and citations omitted). This principle does not apply here.

District courts are split as to whether Congress intended the FLSA to provide the exclusive remedy for violations of the statute's provision, and no circuit court has considered the issue. *See, e.g., Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.*, No. CIV.A. 09-379, 2009 WL 2175585, at *3 (W.D. Pa. July 20, 2009) ("because I find that the general goals of RICO and the FLSA vary, I do not find that the FLSA can preempt the RICO claim in this case."). If congress had intended the FLSA to bar properly pleaded RICO claims, it could have said as much. It did not and such an intention should not be imputed by the courts.

But even if the FLSA could preempt RICO, plaintiffs' RICO claim does not depend on the FLSA claim and would therefore not be preempted. *See Valverde v. Xclusive Staffing, Inc.*, No. 16-CV-00671-RM-MJW, 2017 WL 1386351, at *5 (D. Colo. Feb. 23, 2017), *report and recommendation adopted in part, rejected in part*, No. 16-CV-00671-RM-MJW, 2017 WL

19

3866769 (D. Colo. Sept. 5, 2017) (finding facts that form the basis for RICO claim could not be separated from those that supported FLSA claim).

In their motion, defendants rely primarily on *Valverde* to support their preemption argument. That case provides a test for determining the FLSA's preemption of a RICO claim as turning "on whether, but for the proscriptions of the FLSA, the defendant's conduct would constitute a fraudulent scheme." *Id. Valverde* provides a good example of when this "but for" test is met, and a RICO claim is preempted.

There, the plaintiff alleged a myriad of frauds that resulted in the underreporting of time and, as a result, unpaid overtime under the FLSA. *Id.* at *6. Importantly, the alleged harm caused by the RICO fraud was unpaid FLSA overtime. *Id.* Thus, absent the FLSA's overtime protections, the *Valverde* plaintiffs had no harm. *Id.* (citing *DeSilva, DeSilva v. N. Shore-Long Island Jewish Health Sys*., Inc., 770 F. Supp. 2d 497, 515 (E.D.N.Y. 2011) ("plaintiffs would not have any claim for mail fraud or interference with their rights if they did not have an independent right under the FLSA to compensation for all overtime hours worked.")).

Here, plaintiffs allege defendants' RICO fraud caused plaintiffs to pay recruiting, visa, and travel costs they otherwise would not have paid. FAC ¶¶ 5.27, 5.182. These harms exist with or without the FLSA's proscriptions

for payment of minimum wages or overtime. Put another way, if the FLSA were wiped from the United States Code, the recruiting, travel, and visa costs would remain a harm caused by defendants' RICO fraud. Thus, the RICO claim does exist "but for" the FLSA claim and cannot be preempted by the FLSA.

Defendants ignore the "but for" test and instead, cherry-pick quotes from *Valverde* to argue that the same facts cannot give rise to an FLSA claim and a RICO claim. *See* Dkt. No. 38 at 14-15. But that is not the law.

Plaintiffs' complaint alleges that defendants were required to pay recruiting, visa, and travel costs that were primarily for defendants' benefit and convenience, and that those costs lowered plaintiffs' effective wage rates below minimum wage in violation of the FLSA. Plaintiffs also separately allege that defendants engaged in an enterprise to induce the State Department to issue visas to plaintiffs and that, as a result of defendants' fraud, plaintiffs lost money. These are two independent claims, neither of which should be dismissed.

## IV.  CONCLUSION

Plaintiffs experiences as J-1 visa holders diverged sharply from the stated goals of the Exchange Visitors Program. Plaintiffs allege defendants did not provide them with internships but instead unlawfully used the J-1

visa program to fulfill the Grand America Hotel's ordinary employment needs. Plaintiffs therefore incurred unreimbursed costs that were primarily for the benefits of defendants and that caused their wages to drop below minimum wage in violation of the FLSA.

Plaintiffs further allege that this is defendants' pattern and practice; that defendants formed an enterprise to defraud the federal government to induce the issuance of plaintiffs' J-1 visas and that plaintiffs lost money as a result. This RICO claim is independent of and therefore no preempted by plaintiffs' FLSA minimum wage claim.

For these reasons, plaintiffs respectfully request the Court deny defendants' motion to dismiss.

RESPECTFULLY SUBMITTED AND DATED this 6th day of December, 2019.

TERRELL MARSHALL LAW GROUP PLLC


By:     /s/ Erika L. Nusser, *Admitted PHV*
     Beth E. Terrell*, Admitted Pro Hac Vice*
     Email: bterrell@terrellmarshall.com
     Erika L. Nusser*, Admitted Pro Hac Vice*
     Email: enusser@terrellmarshall.com
     936 North 34th Street, Suite 300
     Seattle, Washington 98103-8869
     Telephone: (206) 816-6603
     Facsimile: (206) 319-5450

ALEX McBEAN LAW OFFICE
P. Alex McBean, #10390
Email: alex@alexmcbeanlaw.com
503 West 2600, Suite 200
Bountiful, Utah 84010
Telephone (358) 347-0727

TOWARDS JUSTICE
Alexander Hood, *Admitted Pro Hac Vice*
Email: alex@towardsjustice.org
1410 High Street, Suite 300
Denver, Colorado 80218
Telephone: (720) 441-2236

*Attorneys for plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

I, Erika L. Nusser, hereby certify that on December 6, 2019, I

electronically filed the foregoing with the Clerk of the Court using the

CM/ECF system which will send notification of such filing to the following:

> Matthew R. Lewis, #7919
> Email: mlewis@kba.law
> R. Jeremy Adamson, #12818
> Email: jadamson@kba.law
> Megan J. Nelson, #15691
> Email: mnelson@kba.law
> KUNZLER BEAN & ADAMSON, PC
> 50 W. Broadway, 10th Floor
> Salt Lake City, Utah 84101
> Telephone: (801) 994-4646
>
> Brett L. Tolman, #8821
> Email: brett@tolmangroup.com
> THE TOLMAN GROUP
> 13827 Sprague Lane, Suite 220
> Draper, Utah 84020
> Telephone: (801) 639-9840
> Facsimile: (801) 448-3375

DATED this 6th day of December, 2019.

TERRELL MARSHALL LAW GROUP PLLC

By: ___/s/ Erika L. Nusser, *Admitted PHV*
     Erika L. Nusser, *Admitted Pro Hac Vice*
     Email: enusser@terrellmarshall.com
     936 North 34th Street, Suite 300
     Seattle, Washington 98103-8869
     Telephone: (206) 816-6603
     Facsimile: (206) 319-5450

*Attorneys for plaintiffs*

24