Matthew R. Lewis (#7919)
R. Jeremy Adamson (#12818)
Megan J. Nelson (#15691)
**KUNZLER BEAN & ADAMSON, PC**
50 W. Broadway, 10th Floor
Salt Lake City, Utah 84101
Telephone:  801-994-4646
mlewis@kba.law
jadamson@kba.law
mnelson@kba.law

*Attorneys for Defendants Grand America Hotels
& Resorts, Inc. and Sinclair Services Company*

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JANN DESCANZO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GRAND AMERICA HOTELS & RESORTS, INC., et al., <br><br> Defendants. | **DEFENDANTS' SUPPLEMENTAL BRIEFING IN SUPPORT OF THEIR MOTION TO DISMISS CLAIMS I AND II OF PLAINTIFFS' FIRST AMENDED COMPLAINT** <br><br> Case No. 2:19-CV-00443-HCN <br><br> Judge Howard C. Nielson, Jr. |

Defendants Grand America Hotels & Resorts, Inc. and Sinclair Services Company (collectively, "Defendants") respectfully submit this supplemental briefing in support of their Motion to Dismiss Claims I and II of Plaintiffs' First Amended Complaint, pursuant to the Court's July 28, 2020 order regarding supplemental briefing.

At oral argument on the Motion, the Court asked counsel whether employers generally are required to pay relocation costs for new employees under the FLSA, to the extent that such

costs would cause the employees' wages to fall beneath minimum wage. The answer to this question is "no." Defendants are unaware of any authority that generally imposes any FLSA-based obligation on an employer to reimburse a new employee for the employee's relocation costs, outside the context of foreign worker programs. In fact, Defendants have been unable to locate any case (outside of the context of foreign worker programs) where a new employee has even raised an FLSA minimum wage claim against an employer for reimbursement of relocation costs. This is not surprising, since any purported obligation to reimburse new employees for relocation costs is plainly inconsistent with the FLSA and its implementing regulations,

Additionally, Plaintiffs have largely relied on the Eleventh Circuit case, *Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228 (11th Cir. 2002), and its progeny, in support of their position. But *Arriaga* and its progeny are not binding or persuasive in the District of Utah. If anything, *Arriaga* underscores why such relocation costs are <u>not</u> generally reimbursable under the FLSA—especially in the context of the J-1 program. Defendants' Motion to Dismiss should be granted.

I. **THE FLSA DOES NOT GENERALLY REQUIRE AN EMPLOYER TO REIMBURSE A NEW EMPLOYEE FOR RELOCATION EXPENSES.**

The FLSA requires "employers to reimburse their employees for any costs incurred "primarily for the benefit or convenience of the employer" if such expenses "cut[] into the minimum or overtime wages required to be paid . . . under the Act." *Johnson v. Equinox Holdings, Inc.*, No. 13 CIV. 6313 RMB JLC, 2014 WL 3058438, at *3 (S.D.N.Y. July 2, 2014) (dismissing FLSA minimum wage and overtime claims regarding employer's alleged failure to pay plaintiffs for certain "off-the-clock" work and to reimburse them for job-related expenses). *See also, e.g.*, 29 C.F.R. § 531.3(d) (stating that "[t]he cost of furnishing 'facilities' found by the

Administrator to be primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages").

In determining whether an expense is "primarily for the benefit or convenience of the employer" or otherwise reimbursable under the FLSA, courts primarily look to the DOL regulations. *See Wass v. NPC Int'l, Inc.*, 688 F. Supp. 2d 1282, 1284–85 (D. Kan. 2010) (analyzing regulations in part 531 of Title 29 in determining that plaintiffs failed to state a minimum wage violation claim under FLSA regarding reimbursement of pizza delivery drivers' vehicle expenses); *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 899 (9th Cir. 2013) (finding that H-2A workers' transportation costs were primarily for the benefit or convenience of the employer, but only after analyzing DOL regulatory language that specifically addressed the issue in the context of the H-2A program). Sections 531.3 and 531.32 of Title 29 provide examples of "facilities" or certain expenses that are considered to be "primarily for the benefit or convenience of the employer":

- "(i) Tools of the trade and other materials and services incidental to carrying on the employer's business; (ii) the cost of any construction by and for the employer; (iii) the cost of uniforms and of their laundering, where the nature of the business requires the employee to wear a uniform." (29 C.F.R. § 531.3(d).)

- "Safety caps, explosives, and miners' lamps (in the mining industry); electric power (used for commercial production in the interest of the employer); company police and guard protection; taxes and insurance on the employer's buildings which are not used for lodgings furnished to the employee; 'dues' to chambers of commerce and other organizations used, for example, to repay subsidies given to the employer to locate his factory in a particular community; <u>transportation charges where such transportation is an incident of and necessary to the employment (as in the case of maintenance-of-way employees of a railroad)</u>; charges for rental of uniforms where the nature of the business requires the employee to wear a uniform; medical services and hospitalization which the employer is bound to furnish under workmen's compensation acts, or similar Federal, State, or local law. On the other hand, meals are always regarded as primarily for the benefit and convenience of the employee. For a discussion of

3

>reimbursement for expenses such as "supper money," "travel expenses," etc., see § 778.217 of this chapter. (29 C.F.R. § 531.32(c) (emphasis added).)

Admittedly, the examples in these lists are not meant to be "exclusive." *See* 29 C.F.R. § 531.3(d)(2). But they are nonetheless "illustrative" of costs that are considered to be primarily for the benefit or convenience of the employer. *Id*.

Here, relocation costs for new employees are not among the regulatory illustrations of costs that are primarily for the benefit of an employer, nor are they similar. At best, Plaintiffs may argue that relocation costs for new employees are primarily for the benefit or convenience of the employer to the extent they may be construed as "transportation charges where such transportation is an incident of and necessary to the employment (as in the case of maintenance-of-way employees of a railroad)," 29 C.F.R. § 531.32. At the outset, the fact that the DOL chose to narrowly qualify the type of transportation charges that are reimbursable to those instances where "transportation is an incident of and necessary to the employment (as in the case of maintenance-of-way employees of a railroad)," as opposed to simply delineating a broader rule that generally requires reimbursement of transportation or relocation expenses, signifies that a broader rule of requiring all employers of new employees to reimburse relocation costs simply does not exist under the FLSA.

This point is underscored by the relatively limited authorities that have interpreted the meaning of transportation costs that are "an incident of and necessary to the employment." The plain language of the regulation, itself, identifies only a fairly obscure example of transportation costs that are primarily for the benefit or convenience of the employer, i.e., transportation costs for "maintenance-of-way employees of a railroad." 29 C.F.R. § 531.32(c). As another example, a case in the District of Massachusetts found that transportation costs that truck drivers incurred to

attend a new employee orientation were costs that were primarily for the benefit of the employer and which could not be deducted to the extent they lowered the drivers' pay beneath minimum wage. *See Montoya v. CRST Expedited, Inc.*, 404 F. Supp. 3d 364, 392 (D. Mass. 2019). It is easy to see why one-time relocation costs incurred by a new employee, in general, are distinguishable from costs that a railroad worker may incur in traveling to remote locations for work assignments, and that these costs are also distinguishable from the costs that a new employee may incur attending a mandatory new employee orientation.

The lack of any DOL regulation that generally requires reimbursement of relocation costs—coupled with the fact that the DOL has deliberately spelled out certain nuanced rules regarding transportation costs in other specific instances, including in connection with foreign workers receiving other types of visas—underscores why the Court should not recognize any general duty of an employer to reimburse relocation costs for new employees.

II. *ARRIAGA* AND ITS PROGENY UNDERSCORE WHY A NEW EMPLOYEE'S RELOCATION COSTS ARE GENERALLY NOT REIMBURSABLE UNDER THE FLSA—ESPECIALLY IN THE CONTEXT OF THE J-1 PROGRAM

In their opposition and at oral argument, Plaintiffs relied heavily on *Arriaga* and its progeny. As discussed in Defendants' prior briefing, *Arriaga v. Fla. Pac. Farms, L.L.C.* is not binding in the District of Utah, nor is it persuasive. (*See* Defs.' Reply in Support of Mot. Dismiss at 5, 6.) If anything, *Arriaga* underscores why the FLSA does not generally require an employer to reimburse a new employee's relocation costs, as it would have been unnecessary for the Eleventh Circuit to adopt a specific rule in the context of the H-2A program if a general rule existed. Nor should *Arriaga* be construed as requiring employers to reimburse relocation costs for J-1 workers.

5

In *Arriaga,* migrant H-2A farmworkers sued their employers for allegedly failing to comply with the FLSA's minimum wage requirements, in part by failing to reimburse the farmworkers for farmworkers' travel costs to the United States. *See Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228 (11th Cir. 2002). While the Eleventh Circuit ultimately concluded that the travel costs were "an incident of and necessary to the employment," the court did so only after considering the unique characteristics of the H-2A program, including the observation that "[e]mployers resort to the H–2A program because they are unable to employ local workers who would not require such transportation costs." *Id.* at 1242. The Department of Labor has highlighted the significance of the unavailability of workers but for the H-2A program as being indicative of "greater-than-normal benefits to employers and less-than-typical benefits to employees." U.S. Department of Labor Field Assistance Bulletin No. 2009-2, FN 6 (*available at* https://www.dol.gov/agencies/whd/field-assistance-bulletins/2009-2). While employers of H-2A and H-2B workers must certify that they are unable to find local workers to perform the jobs to be performed by foreign workers,[1] this is not true of the of J-1 program. *See, e.g.*, 22 C.F.R. §

---

[1] *See* 29 C.F.R. § 503.1(a) (emphasis added) ("DHS regulations at 8 CFR 214.2(h)(6)(iv) provide that an employer's petition to employ nonimmigrant workers on H–2B visas for temporary non-agricultural employment in the United States (U.S.), except for Guam, must be accompanied by an approved temporary labor certification from the Secretary of Labor. The temporary labor certification reflects a determination by the Secretary that: (1) There are not sufficient U.S. workers who are qualified and who will be available to perform the temporary services or labor for which an employer desires to hire foreign workers; and (2) The employment of the foreign worker will not adversely affect the wages and working conditions of U.S. workers similarly employed. . . ."); 29 C.F.R. § 502.1(a) (emphasis added) ("(1) A petition to import an alien as an H–2A worker (as defined in the INA) may not be approved by the Secretary of the Department of Homeland Security (DHS) unless the petitioner has applied to the Secretary of the United States Department of Labor (Secretary) for a certification that: (i) There are not sufficient workers who are able, willing, and qualified, and who will be available at the time and place needed, to perform the labor or services involved in the petition, and (ii) The employment of the alien in such labor or services will not adversely affect the wages and working conditions of workers in the U.S. similarly employed. . . ."). *See also Arriaga* at 1232 ("Agricultural employers are permitted to hire nonimmigrant aliens as workers under the H–2A program if they first obtain from DOL certification that (1) there are insufficient domestic workers who are willing, able, and qualified to perform the work at the time and place needed; and (2) the employment of aliens will not adversely affect the wages and working conditions of domestic workers").

62.22(b)(1)(i) (stating that the primary objective of the J-1 program is not employment, but, rather, "to enhance the skills and expertise of exchange visitors in their academic or occupational fields through participation in structured and guided work-based training and internship programs and to improve participants' knowledge of American techniques, methodologies, and technology"). Importantly, while Plaintiffs have alleged that Defendants use "J-1 visa interns as substitutes for ordinary employees," (*see* FAC ¶ 1.8), nowhere in Plaintiffs' Amended Complaint do they allege that Defendants had to resort to the J-1 program because they were unable to employ local workers. *See Arriaga* at 1242. The fact that the J-1 program is not premised upon the need for otherwise unavailable workers is fatal to Plaintiffs' FLSA claim.

Further, the transportation costs incurred by Plaintiffs were made in the context of the J-1 program, where the "primary" objective is not employment, but, rather "to enhance the skills and expertise of exchange visitors in their academic or occupational fields through participation in structured and guided work-based training and internship programs and to improve participants' knowledge of American techniques, methodologies, and technology." 22 C.F.R. § 62.22(b)(1)(i). This underscores why the expenses should not be construed as being primarily for the benefit or convenience of employers.

In short, Plaintiffs cannot plausibly allege a basis for establishing, as a matter of law, that J-1 workers' costs were primarily for the benefit or convenience of Defendants. To sustain Plaintiffs' claim, even at the pleadings stage, would have staggering consequences by inviting countless other employees (in the J-1 program or otherwise) to sue their employers under the FLSA. Defendants respectfully request that the Court avoid endorsing any such rule and that the Court, instead, dismiss the FLSA claim.

## CONCLUSION

For the foregoing reasons, Defendants submit that the FLSA does not generally require employers to reimburse new employees for relocation costs—particularly in the context of the J-1 program. Accordingly, the applicable law on this issue underscores why the Court should dismiss Plaintiffs' First Claim for alleged failure to pay minimum wage under FLSA.

DATED this 4th day of August, 2020.

              KUNZLER BEAN & ADAMSON, PC

              */s/ Matthew R. Lewis*
              Matthew R. Lewis
              R. Jeremy Adamson
              Megan J. Nelson

              *Attorneys for Defendant Grand America Hotels & Resorts, Inc. and Sinclair Services Company*

**CERTIFICATE OF SERVICE**

On this 4th day of August, 2020, the undersigned hereby certifies that a true and correct copy of the foregoing **DEFENDANTS' SUPPLEMENTAL BRIEFING IN SUPPORT OF THEIR MOTION TO DISMISS CLAIMS I AND II OF PLAINTIFFS' FIRST AMENDED COMPLAINT** was filed with the Clerk of the Court using the CM/ECF system, which sent notifications of such filing to the following:

P. Alex McBean
Alex McBean Law Office PLLC
P.O. Box 1726
Bountiful, Utah 84011
mcbean04@gmail.com
-and-
Alexander N. Hood
Towards Justice
1410 High Street, Ste 300
Denver, CO 80218
alex@towardsjustice.org
-and-
Erika L. Nusser
Beth E. Terrell
Terrell Marshall Law Group
936 N 34th Street, Ste 300
Seattle, WA 98103
enusser@terrellmarshall.com
bterrell@terrellmarshall.com

*Attorneys for Plaintiffs*

*/s/ Kiersten Slade*
Kiersten Slade